FISCHLI
v.
FISCHLI.

## FISCHLI v. FISCHLI.

A wife obtained in *Kentucky* a decree of divorce, with an allowance for alimony of a certain sum of money, and the use for life of one-third of her husband's real property within that state : *Held*, that though the maintenance were inadequate, she could make no application to our Courts for any additional provision out of her husband's real property within this state.

Whenever a matter is finally determined by a competent tribunal, it is considered at rest forever. And this principle embraces not only what was actually determined, but every other matter which the parties might have litigated in the cause.

In rendering a decree for alimony under our statute, the Court may take into view the whole property of the husband wherever it may be. The allowance may be made by a decree in favour of the wife for a gross sum or for an annuity, which decree would give her an incontrovertible demand against the husband wherever he or his property might be found ; or it may be made by giving her a sufficient part of her husband's property within the state.

Alimony may be given incidentally, as on a divorce under our statute ; but no Court has any original jurisdiction to allow it. Hence, if an adequate provision for the wife be not made by the Court granting a divorce, no other Court can supply the deficiency.

*Monday,*
*May 16.*

ERROR to the *Clark* Circuit Court.

HOLMAN, J.—*D. Fischli* filed her bill in chancery in the *Clark* Circuit Court, showing that in the year 1817 she intermarried with *J. Fischli*, to whom she performed the duties of an obedient, affectionate wife; but that he deserted her a few days after the marriage, with the intention of abandonment for more than two years. That he neglected and refused to provide for her support, treated her with severity, and unjustly aspersed her character. That she applied to the *Jefferson* Circuit Court, in the state of *Kentucky*, and, by the decree of the said Court, obtained a divorce from her said husband, and a decree against him for the sum of 3,800 dollars, and one-third of the real estate he possessed in the state of *Kentucky* during her life; but that the avails of said decree, after paying the expenses of litigation, are insufficient for her comfortable support. She further states in her bill, that he is possessed of valuable lands and tenements in *Clark* county in this state, and prays for a decree of one-third part thereof during her life, and for general relief. To this bill the defendant demurred, his demurrer was sustained, and the bill dismissed.

This divorce having been granted in *Kentucky*, and a part of

the husband's property decreed to the wife, it is important for us to know how far the rights of the parties, with regard to the provision made for the wife, were adjudicated and determined by the proceedings which were had in that state. For whenever a matter is adjudicated, and finally determined, by a competent tribunal, it is considered as forever at rest. This is a principle upon which the repose of society materially depends; and it therefore prevails, with a very few exceptions, throughout the civilized world. This principle not only embraces what actually was determined, but also extends to every other matter which the parties might have litigated in the case. See 5 Bac. 439, and the authorities there cited. Guided by this principle, we should naturally suppose that the decree of the Circuit Court in *Kentucky* had done all that equity and justice required between the parties, if there is nothing in the record of their proceedings to evince the contrary, nor any thing in the case to limit their authority; and that the rights of the parties, being thus determined, were subject to no further litigation. The separate maintenance that should be decreed to the wife out of the husband's property, according to her condition in life, the fortune she brought, and her husband's circumstances, was the subject-matter of adjudication before the Court that granted the divorce; and if that tribunal had the power to do ample justice between the parties, but has failed to do it, no other tribunal can take cognizance of the subject, and supply the deficiency. The matter must rest, agreeably to the foregoing principles, where that Court has left it. In *England*, the power of granting divorces was confined exclusively to the Ecclesiastical Courts. And incident to this power, in cases of divorce a mensa et thoro, they had the power of decreeing alimony. And although there are some cases where the chancellor has decreed alimony, yet we believe there is no case where such a decree was made on account of the insufficiency of the provision made for the wife by the Ecclesiastical Court. There are but few cases where the chancellor has exercised jurisdiction in decreeing a separate maintenance to the wife after such a divorce; and each of those cases turned on some principle, different from that of providing an adequate maintenance for the wife where the Ecclesiastical Court had granted the divorce but had failed to make any provision for the wife, or had made one that was insufficient. The greater number of cases, where the chancel-

May Term, 1825.

FISCHLI
v.
FISCHLI.

lor has interfered in behalf of the wife, have been where there was an express agreement between the parties, or a fund in trust for the future benefit of the wife, as in the case of *Oxenden* v. *Oxenden*, 2 Vern. 493; or where property had been devised or had descended to the wife after the divorce, as in *Nicholls* v. *Danvers*, 2 Vern. 671. If divorces had indeed taken place in those two cases in Vernon, as is supposed by Fonblanque in his treatise on equity, vol. 1, p. 96, they go as far, if not farther, than any subsequent case in favour of the wife. We therefore feel assured there is no case where a further maintenance has been decreed to the wife because the first was insufficient.

The record of the proceedings in *Kentucky* are before us, being made a part of the bill; from which it appears, that there was an appeal from the first decree of the Circuit Court, and that the case was finally determined by the Court of Appeals, under whose direction the final decree in the Circuit Court was made. And it is urged, from the decision of the Court of Appeals, that the decree for the wife's maintenance was predicated on, and limited to, the property which the husband owned in *Kentucky;* for that Court expressly decided that the division of the real estate should be confined to the defendant's lands in that state. From which the complainant would have us to understand, that that Court determined that the defendant's property without the limits of that state, being beyond their direct control, must of necessity be excluded from their consideration in the division they have directed; and that that Court did not consider the rights of the parties as settled, or that they considered them settled on premises where complete equity could not be done for want of authority co-extensive with the defendant's property. This view of their decision receives some support from the construction they have given to their act of assembly on this subject. That act is the same in this respect with ours— that the Court pronouncing the decree of divorce, shall regulate and order the division of the estate, real and personal, in such way as to them shall seem just and right, having due regard to each party and the children if any. The opinion of that Court was, that the division of the property should be made in specie, and not by the decree of a gross sum to be paid by the husband to the wife. This construction, we have no doubt, as a general rule is correct, and most conducive to the interest of both parties. But there are cases where the property may

be of great value, and yet be incapable of a division in spe- May Term, 1825.
cie without a serious loss, if not a destruction of the property.
Such would be the case in many manufacturing establishments, FISCHLI v. FISCHLI.
and in almost all incorporeal hereditaments.   In such cases the
Court, in order to do justice according to the true spirit of the
act of assembly, could not divide the property more equitably
than by allowing a gross sum or an annuity.   We recognized
this construction of the act in the case of *M'Kinney* v. *M'Kinney*,
*Nov.* term, 1818; and we see no reason to doubt its correct-
ness (1).   And if there is any case, where such a construction of
the act ought to be given, and such a division of the property
ought to be made, the present is one of that description.   Un-
der this construction, and acting upon this principle, that Court,
taking a full view of the husband's property, no matter where
it might be situated, nor to what jurisdiction it might be sub-
ject, might have decreed to the wife a sufficient maintenance,
either in a gross sum or in annual payments; which decree
would have given the wife an incontrovertible demand against
the husband, wherever he or his property might be found.
But it is by no means conclusive, that that Court could not have
done justice to the parties, in the division of the property, with-
out giving the act this construction.   It is true that a Court of
chancery, in *Kentucky*, cannot control the lands of the defend-
ant in this state; consequently, the division of the real estate
could not have been so ordered as to give the complainant any
portion here: yet if a sufficient part of the husband's property
lay in *Kentucky*, to constitute an adequate provision for the wife,
the Court, with a view to the division of all the property,
might have given a proper proportion to the wife, and allotted
her that portion in *Kentucky*.   This we conceive to be within
their jurisdiction, even on the construction they have given to
the act of assembly.   Taking this view of the case, there is no-
thing in the opinion of the Court that altogether excludes the
idea that they have given the wife all that they would have giv-
en her, if all the property the defendant owns in this state had
been in *Kentucky*.   True it is, the majority of the Court of Ap-
peals decided, that the division of the real estate was to be con-
fined to the state of *Kentucky;* from which Judge *Mills* dissent-
ed, being of opinion that the real estate in *Indiana* should be tak-
en into the estimate.   This decision of the majority, and dissent
of Judge *Mills*, might have been the same, if all the real estate

had been in *Kentucky.* The majority might have concluded, that one-third of the quantity of lands the defendant actually held in *Kentucky*, together with the gross sum of 3,800 dollars, was an adequate maintenance; and Judge *Mills* might have been disposed to make a further allowance, amounting to one-third of the lands the defendant held in this state. This may be considered as a forced construction of the decision of the Court of Appeals; but it is certain that full evidence of all the defendant's possessions, both in *Kentucky* and *Indiana*, was before that Court, and we conceive they had competent authority, and, as the superintendent of the Circuit Court, were the only proper tribunal to make a fair division of the property, and one that would be conclusive between the parties. We are therefore bound to conclude, without unequivocal evidence to the contrary, that that Court took the whole estimate of the defendant's property, real and personal, both in *Kentucky* and *Indiana*, and finally determined that the gross sum of 3,800 dollars, with one-third of the defendant's lands in *Kentucky*, was all to which the defendant was in equity entitled. This view of the case is strengthened by the supposition, that that Court must have presumed that no other tribunal, under ordinary circumstances, could take any further cognizance of the subject, and that their decision was final and conclusive between the parties, as to the extent of the wife's maintenance.

If we look further into this case, and consider it independently of the provision made for the wife by the decree in *Kentucky*, we shall find nothing in it to authorize the interference of a Court of chancery. We draw this conclusion, not from the practice in *England* of never allowing alimony on the dissolution of the bonds of matrimony, but from the practice in chancery where there has been a divorce a mensa et thoro, to which this divorce is in some respects assimilated. Divorces from the bonds of matrimony in *England*, are predicated on the nullity of the marriage, and all things are thereby left in the same condition in which they would have been if no such connexion had been contemplated. Divorces a mensa et thoro in *England*, and statutory divorces here, and the consequent allowance of alimony, are predicated on the relationship between husband and wife, and the obligation of the husband to provide for the suitable maintenance of the wife. Taking the matter then as it stood in *England*, we find no precedent, except in a few extreme

cases, where any Court has interfered in granting a mainte-
nance to the wife, other than the Court that granted the divorce.
Most of the cases turn on the agreement of the parties, which
will be carried into effect whether there has been a divorce or
not. Vide 1 Fonb. 97.—1 Maddock, 307.—*Head* v. *Head*, 3
Atkyns, 547.—*Seeling* v. *Crawley*, 2 Vernon, 386. It seems
to be a general rule, that the granting of a maintenance to
the wife out of the husband's property, is not an original but
an incidental matter. Such was the conclusion of Fonblanque,
after reviewing most of the cases on the subject. See 1 Fonb.
97. Such was also the determination of Lord Chancellor *Thurlow*,
in *Ball* v. *Montgomery*, 2 Ves. jr. 195. His language is: "I take
it to be now the established law, that no Court, not even the Ec-
clesiastical Court, has any original jurisdiction to give a wife se-
parate maintenance. It is always as incidental to some other mat-
ter that she becomes entitled to a separate provision. If she ap-
plies in this Court upon a supplicavit for security of the peace a-
gainst her husband, and it is necessary that she should live
apart, as incidental to that the chancellor will allow her se-
parate maintenance; so in the Ecclesiastical Court, if it is
necessary for a divorce a mensa et thoro propter sævitiam."
Similar to this is the authority given by our act of assembly.
The making of a provision for the wife, by the division of the
property, is incidental to the divorce. The Court that decrees
the divorce, is to make the provision. And if that Court fails
to provide for the wife, by a division of the property, or makes
an inequitable division, we know of no authority, either from
the act of assembly, or the *English* books, for any other Court
to remedy the evil, or extend the provision (2).

*Per Curiam.*—The decree is affirmed with costs.

*Dewey,* for the plaintiff.

*Nelson,* for the defendant.

(1) In that case, the decree of the Circuit Court, besides the divorce, was—
that the plaintiff recover against the defendant the sum of 75 dollars every
three months from the day of the decree during four years for her alimony,
and for raising her daughter. The Sup. Court affirmed the decree. This
was under the Stat. 1813, p. 79. Vide also *Frakes* v. *Brown, May* term, 1830,
post. Stat. 1823, p. 156.

(2) A bill was filed in the Court of chancery, *New-York,* by the wife against
her husband for a divorce for adultery. The answer confessed the charge.
The defendant's real estate was estimated t 3,750 dollars, and his personal
at 800 dollars; the whole annual value thereof was 325 dollars. The Court.

besides granting the divorce, allowed the complainant 100 dollars per annum during life for alimony. And, as the statute speaks of such maintenance as to the Court shall, from time to time, seem reasonable, it was considered that the Court might afterwards vary the allowance, if circumstances in relation to either of the parties should require it. *Miller* v. *Miller*, 6 Johns. Ch. R. 91. Neither a decree for alimony, nor a deed of separate maintenance, can be set up by the husband as a bar to the suit of a tradesman for necessaries furnished the wife, if the sum secured by the decree or deed be not paid. *Hunt* v. *De Blaquiere*, 5 Bing. 550.