## Town of Exeter *v.* Town of Warwick.

Before any statute in Rhode Island, relative to the settlement and removal of paupers, the English law on the subject was in force.

Under the law relative to the settlement of paupers, the place of birth is the place of legal settlement, if a settlement in no other town has been acquired as provided by statute; and so *prima facie* by the common law.

If one who was once a slave, has been a freeholder in a town, and has paid taxes for his estate in such town for more than thirty years, and has been treated as a freeman of such town — the same town in which his alleged master was taxed — it is too late, in a question of settlement, to object to his want of freedom, if the question of slavery had anything to do with the case.

The pauper who was the subject of the order of removal from the town of Warwick to the town of Exeter, and the daughter of the man alleged to be a slave, was free born, as were all persons born after the 1st March, 1784.

If the father, instead of the daughter, were the pauper, though he was a manumitted slave, his master, by the law in the *Rev.* of 1767, would be liable for his support.

THIS case was an appeal from an order of removal of the town of Warwick of a pauper, to the town of Exeter. The facts are set forth in the opinion of the Court, delivered as follows,

By DURFEE, J. This is an appeal from an order of removal of the latter town to the former, of Pruda Tillinghast, daughter of Braddock Tillinghast, adjudging the town of Exeter to be the place of legal settlement of the said Pruda. It is admitted, that Pruda was born in Exeter, in the year

1797. That she was the daughter of Braddock, who purchased a freehold estate in said Exeter, December 8, 1797, for two hundred dollars; that he was assessed and paid taxes on his estate in said town, from 1800 to 1831, except one or two years, that he was treated by the town as a freeman, and that Rudon Tillinghast was taxed in the same town at the same time.

*Brayton,* for Warwick contends, that under the act of 1748, *birth* gave a settlement. And if not in this case, the freehold of the father; and in either case the pauper belongs to Exeter.

On the other side it is alleged that Braddock was a slave; could acquire no estate, and that, by the law in the revision of 1767, he could acquire no settlement, but must be supported by his master.

From the evidence, there is no doubt that Braddock was either born or purchased a slave, but was permitted to leave his master and act for himself about the close of the revolutionary war, and that no claim on him, or for his services, was ever made by his supposed master; though no evidence of a manumission pursuant to the act in the revision of 1767, was offered.

The first act of the general assembly on the subject of settlement and removal, was passed in 1748. Previous to this, several acts had been passed to prevent the inhabitancy of vagrants, indigent persons, &c. The first of these was passed in 1727. It appears, by the preamble to the act, that where "bonds were tendered to indemnify the town from charge," the town councils previously had no authority to reject such persons, or to prevent their inhabitancy. The object of this act of 1727, according to the preamble, was not to prevent their becoming chargeable as paupers, but to prevent their "proving pernicious to the towns," "by their corrupt morals

in debauching of youth, and enticing of servants, to pilfer and steal from their masters," &c.

This act authorized the town councils to allow or not, at their discretion, of the inhabitancy of any stranger, coming into the colony, on the tender of bonds as aforesaid. It also directed " that all foreigners and strangers," coming into the colony to settle or reside " any considerable time," should give notice of such intention to the town council, within one month. And on neglect, any assistant or justice was authorized to remove them out of the town.[1] It further authorized the town councils to punish, by fines or whipping, any person who should return into the town, after being rejected as an inhabitant, and sent out of the town.

In 1741 the town councils were authorized " to bind out to apprenticeship poor children who are likely to become chargeable to the town wherein they live.

The title of the act of 1748 is " An act directing the method of gaining a legal settlement in any town in the colony, and for the removal of poor persons from their illegal to their legal place of settlement."

The preamble is, " whereas there is no law of this colony, for determining a legal settlement in any town in the same, which often causes great controversies between towns, in the removal of their poor, and the laws already in force for removal of poor persons from their illegal to their legal place of settlement, not being so agreeable to the constitution of this government as might be, therefore," &c. This plainly shows that by " no law of the colony," is meant no statute law. The English law was in force, and is recognized by the admission of " the laws already in force for removal of

---

[1] In October, 1737, this power of removal was extended to the town councils.

6*

poor persons from their illegal to their legal places of settlement," and the reference to the constitution of this government, that is, the colony.

It was evidently the intention of this act to abolish all previous modes of gaining a settlement. It declares that thereafter " no person or persons whatsoever, shall gain any legal settlement, or become an inhabitant of any town in the colony," but in the three ways pointed out in the act.   First, Giving notice to the town council of the town into which any person might come, with intent to reside therein, within one month after so coming in, and remaining therein, without being warned out, for the space of one year.   Second, The purchase of a freehold estate, of the value of thirty pounds sterling.   Third, The serving an apprenticeship in any town, other than that of the apprentice's birth.   In this case it was in the election of the apprentice to be settled in the town where he served his apprenticeship, or in the place of his birth.

It is plain, by this act, that the place of birth is considered as the place of legal settlement, where none has been acquired.   The town council, on complaint that any person is likely to become chargeable, are directed to inquire in what town " he was last *legally* settled, or, if they find none, the place of his *birth.*"   And was directed to send him, " in case he had not obtained any legal settlement since his *birth*, to the place where he was *born.*"   This act of 1748 is continued without alteration till the revision of 1767, unless the act, introducing certain English statutes, in February, 1749, be considered as amending it.   This act of 1749, declares to be in force, after enumerating certain statutes on other sobjects, " all statutes relating to the poor, and relating to masters and their apprentices, so far as they are applicable in this colony, and where we have no law of the colony."

The act of 1748 is reënacted in the revision of 1767, with the provisions of the act 1727 and 1741, better expressed. Also the act of 1749, introducing English statutes. But these English statutes, thus introduced, could not have been intended to apply to the settlement and removal of paupers, because they, and the adjudications of the English courts, were the only laws in existence in 1748 on the subject, and which are declared by this act of 1748 as the reason of its passing, " not to be agreeable to the constitution of this government." And because, at the time of their introduction, we had " a law of the colony," and because they were not, in the language of the legislature, " applicable in this colony."

The common law made no provision for the support or removal of the poor. The first act on the subject was, according to commentators, passed in the reign of Richard the second. Though this act only directed certain beggars, " to draw them to the towns where they were born," adding, " and there shall continually abide during their lives." From which it is inferred that this act made the place of *birth* the place of settlement. And according to Burn, (3, 357, 365,) this was the ancient genuine settlement. (Also Salk. 427.) And is now in England *prima facie* the place of settlement, until some other can be shown. (1 Black. 362 ; 3 Burn, 365.) If the father had a settlement, the child's was that of the father. If he had none, that of the mother, if she had one. If she had none, the child was settled where born. This was the English law before the year 1748, (Salk. 427, 526 ; 2 Ld. Raym. 1473 ; Stra. 544,) and probably before and after the act 1748, was the law of the colony. It was founded on the adjudications of the English courts on common law principles, rather than on statutory provision, or expositions. Under the act of 1748, therefore, the place of the pauper's birth, or that of the parent's settlement, if either had

one, (Burn, 373, 374; Foley, 254; Ld. Raym. 1473,) was the place of legal settlement of the pauper, if he had not acquired one, in either of the ways pointed out in that statute. In other words, settlement might be by birth, or parentage, and perhaps marriage, under the act of 1748, in addition to those prescribed by the act.    These necessarily resulted from the relationship which parents bear to their children, and husband and wife to each other.    The latter cannot be lawfully separated, though paupers, nor can children be separated during nurture, from their parents.    (3 Burn, 366.)

In the case in question the pauper was born in Exeter, in 1797.    If birth alone therefore gave a settlement, she belongs to that town.

But a second ground taken is, that her father, Braddock Tillinghast, was a freeholder in that town, from 1797 to 1831, of an estate above the value prescribed by the statute, and which by the statute gave him a settlement.

The answer to this is, that he was a slave, and if ever manumitted, not according to the act of 1767, and so the town not liable for his support, but his master and his heirs.

In reply to this it is said, that Braddock was not only a freeholder in the town of Exeter, all the time aforesaid, but that he paid taxes for his estate in that town more than thirty years; was treated as a freeman by the town, the same town in which his supposed master was taxed at the same time. And that after having thus considered him, and received the benefit of his labor and estate, in defraying the expenses of the town and the support of government, it is too late, in a question of settlement, for the town to object to his want of freedom.    This is a sufficient answer to the objection of slavery, did the question rest on this point.    But what has the question of slavery to do in this case?    The pauper was not a slave.    She was free born.    All persons born after the 1st of

March, 1784, were free born. The law, therefore, referred to for the support of manumitted slaves, has nothing to do with this case. The pauper was not manumitted, nor was it incumbent on the owner of Braddock, were he a slave, to indemnify the town against the support of Braddock's freeborn children. Whether Braddock was so manumitted as to exonerate his supposed master from liability to support him, in case he had become chargeable, is not now the question. That he was manumitted is a fact. He was permitted to go where he pleased, to acquire property for himself like other freemen, and was treated as a freeman by his fellow townsmen. The object of the law, (in the revision of 1767,) was not to prevent the manumission of slaves, but to prevent any charge to the town in consequence of such manumission. It supposes a manumission, without indemnity ; and therefore requires security to be given to indemnify the town against all charge. And were Braddock the pauper in this case, instead of his daughter, Tillinghast his master, at his representation, would be liable for his support. But not at the suit of Warwick, but the town of Braddock's master, to which town Warwick must have sent him. And the question of the master's liability must have been tried between the master and his town.

*The order must be confirmed.*