Edward H. East, Special Judge,
delivered the opinion of the Court.
This is an appeal in error, upon an issue of devisavit vel non, coming from the Circuit Court of Montgomery *109 County. The alleged testator was horn in the State of Virginia, and at the age of 18 years, ran away from that State, going first to North Carolina — afterwards removed to Tennessee, and finally fixed his residence in Montgomery County, where he lived many years', before his death. At the time of his death, his nearest kindred were grand nephews and nieces, none of whom he had ever seen, except one, and no correspondence had passed, for more than fifty years, if ever, between them. He began life without a dollar, but at the time of his death, had accumulated an estate of more than $50,000, consisting of lands, negroes, and other property. He had been married, but his wife had been dead' for many years. He was a man of good sense and strong, vigorous character.
He had been heard to say, that he did not desire that any of his relatives should have his property; but, that he intended to give it to working, stable and prudent men, who would take care of it. This, or some other cause, made him an object of interest in his neighborhood; and the record shows that more than one of his neighbors had “expectations” of his bounty, of which he was aware.
He seemed to have a poor opinion of his relatives, though he did not personally know them — thought them thriftless; and they, in turn, seem not to have known of his existence or whereabouts, save he was visited one time, by one Joshua Barbee, who remained with him a short time; and when he was about returning to Virginia, the old man gave him a horse, suit of clothes, and some money; but failing to hear from him, accord *110 ing to promise, began to doubt whether he was, in fact, a relative, but an imposter. This brief, uncertain and unsatisfactory relation, tended in no degree, to excite any warmth of feeling upon which much hope of future love or family tie could be based.
The paper offered as the Will, was written by one John Bowman, and bears date October 14th, 1852. At the time of the execution of the paper, the alleged testator was more than eighty years of age — was almost blind, and wholly illiterate. It was duly attested by two witnesses — but was not read over to the deceased in the presence of these two witnesses — nor could they declare that he knew its contents. By this paper, the property is disposed of to various persons, none of whom .were at all related to the deceased; but all of whom were acquaintances, and probably friends, and were persons of general good character. One tract of land is divided between two devisees; the negroes' are grouped into families, and these families disposed of variously; . another tract of land is ordered to be sold by the executor; a third tract to be sold, after the death of a tenant for life, which has not yet occurred. There are also various specified pecuniary legacies, of $500 to $2,000 each, and amounting, in all, to $6,500; and a general residuary clause, in favor of the persons who took the pecuniary legacies.
This paper was admitted to probate in common form, in the proper Court, in August, 1855, the testator having died the month previous. By this paper, John Bowman, the writer, was made executor; was left a legacy of $500 specifically, and made a residuary legatee. *111 He accepted the office of executor, and proceeded to a discharge of the duties, and had executed the Will, at the time this issue was made, at the May Term, 1860, so far as to sell the personal estate; to pass the negroes to the legatees, to whom they were giren; to pay off all the specified pecuniary legacies; to sell- one tract of land; and by petition to Court, jointly with the residuary legatees — he being one of the number — procured a decree, and had sale made of some eight or nine young negroes, not disposed of specifically by the Will — haying been born since the date of the Will — and the proceeds of. this sale divided among the persons mentioned in the residuary clause. If anything remains to be done under this Will, by its executor, beside selling the real estate held by a tenant for life, the record makes no disclosure of it. The issue was certified to the Circuit Court, in May, 1860, and the trial of this issue was had before the Circuit Judge and jury, in September, 1866; upon which trial the jury found in favor of the Will, and judgment entered accordingly; and from this an appeal, is taken to this Court.
On the trial of the case in the Circuit Court, the issue w-as between the heirs-at-law and the devisees and legatees under the Will — the executor being no party of record, he having declined to become a party —but passively permitted the others to contest the matter. In the trial below, after the two attesting witnesses had been examined, and the fact of the execution of the Will settled — because that the testator was blind at the time of its execution, and was, moreover, wholly illiterate, having signed his name merely mechanically — it was *112 incumbent upon the party proposing to set up the paper, to show that the testator had knowledge of its contents: See Watterson vs. Watterson, 1 Head, 1; and Cox vs. Cox, 4 Sneed, 81. And to show this fact, it was proposed to introduce the executor, John Bowman, to which objections were made, because of incompetency. These objections are various: 1st, because he was executor; 2d, because he was a legatee; Ed, because he had an interest in the record. And to meet these objections, or some of them, the following paper was duly proven and read to the Court: “I, John Bowman, in consideration of thirteen hundred and sixty-seven and 64-100 dollars, to me paid, have this day sold, transferred, and do release unto James W. Manson, (here naming the other legatees and devisees under the Will,) all the right, claim, interest and demand that I have as a legatee under the Will of John Barbee, deceased, or may hereafter have, whether that interest is derived from property real or personal, which passes under, or is disposed of, by said Will; and agree to account to them, as executor of said John Barbee, for all such legacies as may be coming to me under said Will, provided said Will shall be established; but if declared not to be the Will of said Barbee, I am, as executor, to account to the heirs-at-law of said Barbee, for the same, m accordance with the laws of the State. The object and intent of this instrument being to assign to them whatever interest I have, as legatee. This 17th day of May, 1861.”
Upon the production of this paper, and proof of its execution, and acceptance by the parties to whom it was *113 made, the Circuit Judge overruled all objections to the competency of the witness, and allowed him to testify in the cause — the effect of his testimony being, to settle the question of the full and complete knowledge of the testator, of the contents and bequests of the Will. On cross-examination this witness stated, that only about $800 of the consideration money, as expressed in said conveyance, had been paid to him, and that he held the note of the parties who had accepted the conveyance from him, for the balance, and that he intended to collect this note, if the law would allow him; and when pressed with a further cross-question, to the effect that if the Will should be set aside, and he should collect the note, would he appropriate it to his own use and never pay it back to the parties, he said: “It is my privilege to make whatever appropriation I please of my own money.”
The question presented for the decision of this Court, arises upon the ruling of His Honor, the Circuit Judge, upon the question of the competency of this witness.
1st, Is an executor a competent witness ipr the Will? By the Ecclesiastical Law, he was incompetent: See Dean vs. Russell, 3 Phil., 334; 1 E. E. R., 411; Jackson vs. Whitehead, 3 Phil., 577; 1 E. E. R., 478; Munday vs. Slaughter, 2 Curties, 72; 7 E. E. R., 23; Modern Probate of Wills, 469. And these decisions rested mainly upon the ground, that, in England an executor is liable to cost if he fails to set up the Will of his testator, and because he is a party to the suit. This rule of the Ecclesiastical Courts led to Parliamentary interference, and by statute, 1 Victoria, ch. 26, sec. 17, it is enacted, “That no person shall,, on account of his being an executor of *114 a Will, be incompetent to be admitted a witness to prove the execution of sncb a Will, or a witness to prove tbe validity or invalidity thereof:” See 1 Williams on Ex., 387.
As to the rule that prevailed at common law" in England, Phillips says: “It may be laid down as a general rule, that executors in trust, trustees and agents, are not incompetent merely on the ground of their liability to actions:” Sec. 1, Phil. Ev., (Cowan & Hill,) 52. Starkee says: “An acting executor is competent to support the Will by proof of the sanity of the testator, although he may become liable as an executor de son tort:” 2 Stark. Ev., 74. And it was held, as long ago as the time of Lord Hale, that an executor having no interest in the surplus, is a good witness to prove the Will in, a cause relating to the estate; and this has been followed by many other decisions to the same effect: Goodtelle vs. Welford, Serg., 139; Goss vs. Tracy, 1 P. Williams, 287; Lowe vs. Jalliffe, 1 Black., 365; Heath vs. Hall, 4 Taunt., 326; Phipps vs. Pitcher, 6 Taunt., 220; Betteson vs. Bromley, 12 East, 250.
In the case of Lowe vs. Jalliffe, which was an issue directed out of Chancery, the executor in trust who had the Will, was examined to prove the sanity of the testator; and when it was objected to, because he having acted, would be liable, if the Will was not set up, to damages, Lord Mansfield said: “His being liable to actions makes no difference; for so are all agents, and yet they are allowed to be witnesses.” This case presented the naked question of the incompetency of executors in trust, by reason of interest, without regard *115 to the question of costs. In Phipps vs. Pitcher, 6 Taunt., 220, it was decided .that an executor who was clothed with a trust to pay debts, and lay out money for the benefit of the testator’s children, and with power to sell freehold, lands in fee, and who had accepted, was a good attesting witness, he taking no interest under the Will. This difference between Ecclesiastical and Common Law Courts of England on this question, has led to different decisions in the Courts of the States of the Union.
Justice Redfield, in his work on Wills, vol. 1, page 258, says: “The competency of an executor to be one of the witnesses to a Will, seems to be well settled in the American States.” And to sustain this proposition, he refers to various State Reports, which, when examined, do not fully sustain the text, many of these decisions being based upon local statutes, passed to effect the competency of executors, and other statutes fixing the costs of the contest, so that the executor could not be made responsible for these, and thereby relieving him of the objection taken in the Ecclesiastical law. And, again, in some States, he is declared to be a nominal party to the record, and is relieved of the incompetency that applies to parties of record, by statute allowing nominal parties to become witnesses. But, he adds: “But where the executor is entitled to commissions upon the estate, so far as personal property is concerned, it has been decided, that an interest is thereby created, which renders him incompetent:” Id., 258-9, referring to Taylor vs. Taylor, 1 Rich., 531; Workman vs. Domminick, 3 Strabhart, (South Carolina,) *116 589; 20 Baib., 238; Tucker vs. Tucker, 5 Ire., 161; Martin vs. Ingram, 11 Ire., 368; 3 Jones’ Law, 441; and such are the decisions of the Courts of North Carolina.
In the case of Arnett vs. Weeks at als., 8 Hump., 547, this Court decided, that: “On an issue of devi-savit vel non, the person appointed executor is a competent witness;” and the authority referred to by the member who .gave the opinion of the Court, is, that in England, in either the Ecclesiastical or Common Law Court, an agent is a competent witness. He was certainly mistaken as regards the Ecclesiastical Court, independent of the Statute of Victoria, before referred to.
At all events, however the law may be upon the question of the competency of an executor, without interest, to be a witness upon an issue of devisavit vel non, in this State in a case in which he is no party to the record, and before he accepted or took upon himself the administration of the estate, it is not necessary to decide in this case. Here the executor had been discharging the trusts of the Will for five years; had sold land; had given off the negroes; had, upon application to Court, in the capacity of residuary legatee — an executor jointly with the other legatees — sold some eight or nine negroes, and had received the purchase money; had accepted a legacy, under the Will, and sold it for full value; made this sale after having notice of the issue; made it for the purpose of becoming a witness to sustain the Will by which he obtained the legacy; took into his estimate of the value of his legacy, the proportion of the land yet unsold, *117 that would come to him under the Will; and, according to his own statement, has left the bona fides of this sale of his legacy in a very questionable condition. This witness’s relation to the record is very different from that of an executor who has just qualified, or who renounces, or who is a naked trustee, himself taking no interest thereunder.
The executor, in this ease, certainly has an interest in this record, though he is no party to it. If this paper is set aside, by what right or title can he claim the legacies specified and residuary, which he has accepted under the Will, and, having accepted, sold for full value?
We are not to be understood as speaking of his acts done as executor, and strictly in accordance with the duties of that office; for, it may be, that, as to these, he cannot be questioned, even should the Will hereafter be set aside. Therefore, we do not decide in this case, that the executor is incompetent as a witness, because of his liability over to the heirs and distributees for his acts done as executor, should the paper not be established hereafter as a Will, but especially pretermit any opinion on this point. But we do think his incompetency as a witness can be safely rested upon the fact that he is a legatee under this paper; has accepted the legacy without consideration, as a volunteer; and has disposed of it after he had notice of this contest, and does not occupy in this respect, the equitable position of an innocent purchaser. And, while the law may exempt him from all liability, should this paper hereafter be set aside, for all his bona fide acts done as executor, it can *118 afford no shield to Mm for those acts done by him as va legatee; and the fact that he has sold his legacy, cannot, we think, affect the question of his liability over, because he sold it, not as executor, but as personal owner and legatee under the Will; and should the Will be set aside, he is put in the attitude of having sold a legacy to which he thought he was entitled — for a full and fair consideration — but to which, in fact, he had no right.
If the Will should be established, then he sold something of value to the purchasers; if not established, then he sold nothing, and holds their money without any fair consideration or equivalent; and he is put in the painful attitude, now, alone, by swearing to make good to his purchasers, the subject of the sale. Every consideration of morals' and fair dealing, invite him to the very verge of veracity — that verge nearest perjury. A witness thus situated, takes the stand between two Cross-fires — the heirs and distributees, upon the one hand, threaten him with a loss of legacies, if he swears to less than is necessary to establish the Will, — on the other hand, he is pressed to the same point, by those who purchased his legacies, and whose money he has taken. We cannot establish ,so painful a precedent. While the principle that the next of kin to the deceased may release all interest in the estate of the testate, and thereby become a competent witness against the Will, has been held to be the law" in this State, in the case of Patton, Exr., vs. Allison et als., 7 Hum., 320, on the principle that no one is compelled to accept an estate cast upon him by testacy or intestacy, *119 and may, therefore, release all claim to any part of it before he accepts it, we have no knowledge of any case that permits a legatee to sell his interest under a Will, and thereby become a witness to sustain the Will on which his legacy depends. Sere he first accepts, and then, on the presumption that his acceptance and the consent of the executor has completed his title, sells — both transactions based upon the validity of the Will — then becomes a witness to establish the Will— and the measure of the value of his legacy is not made to depend, so much upon the intrinsic value thereof, as upon the strength, boldness, and distinctness of the testimony which he is expected to give. Not only so as regards its value, but the existence or non-existence, legally, of the legacy itself, is dependent upon the swearing. As exalted an opinion as we may have of human nature, we think this presents too great a temptation to be adopted as a precedent. This case carries its own condemnation. Here the witness held on to his interest as a legatee, until after the issue was made up and certified, and he, thereby, notified of the jeopardy to which it was about to be exposed. The greater portion of his legacy, in due course of administration of the estate, must have been in his own hands, as executor, to his own use in money, and the money he sells for other money, to become a witness, to prove, in effect, that the money parted with, was legally his. In the case of Harris vs. Palmer, 21 Penn., 296, the Supreme Court say: “Though a legatee may release or renounce a legacy, and thus become. a competent witness to prove a Will, yet, he cannot make himself competent, by assigning his interest to an *120 other;” and thus overruled, “an illegitimate line of decisions begotten” in that state by a previous decision to the contrary. And this principle is affirmed in the case of Part vs. Avery, 5 Watts & Sergeant, 511; and is recognized by this Court in the case of Anderson vs. Brodie, 7 Yer., 297.
We, therefore, without passing upon the other points pressed in argument at the bar, as errors in the Court below, reverse His Honor, the Circuit Judge, upon the question of the incompetency of this witness, and remand the cause for a new trial.