| 106 | 189 |
|-----|-----|
| 126 | 482 |
| 106 | 189 |
| 137 | 464 |
| 106 | 189 |
| 155 | 643 |
| 106 | 189 |
| f190 | 4192 |

The Equitable Trust Company *et al.*

*v.*

Septimus Fisher *et al.*

*Filed at Springfield March 29, 1883.*

1. Trust deed—*terms of the trust—may be prescribed and must be observed.* The grantor in a deed of trust, in declaring the trust, may mould and give it any shape he chooses, and he may provide for the appointment of a successor or successors to the trustee upon such terms as he may choose to impose, but when imposed the terms must be pursued, to render the acts of the successor in trust valid. It is alone by force of the power delegated by the deed that the trustee can perform any act with reference to the trust property or fund, and in executing these powers he must pursue them, or his acts will be void.

2. Same—*sale by one as successor must be in accordance with the power.* The owner of land gave a deed of trust on the same to secure the payment of notes, etc., to A, as trustee, with a provision therein that in case of A's death, absence from the State, his inability or refusal to act at any time when action should be required of him, B should be his successor in the trust, with like powers to act as such, and also providing that for the same reasons as to B, C should become successor, and have the power to act when required. The latter advertised the property for sale before A or B had declined to act, they afterward executing a formal declension, which was antedated so as to make its date cover the time required for the notice of the sale, and the evidence failed to show that C was called upon to act by the holder of the indebtedness until more than twenty days after he gave notice of the sale, which was required to be thirty days. C sold the premises at great sacrifice to one D, for B, making statements at the sale disparaging the title. It was *held*, there was no error in a decree setting aside the sale on bill by the debtor for that purpose, and allowing him to redeem from the trust deed.

3. Same—*whether a request is necessary before a trustee can act.* Where a trust deed gives the trustee the power to advertise and sell the mortgaged premises on default of payment, when so requested by the holder of

the indebtedness, giving thirty days' notice of such sale, and the trustee, without being so requested, advertises the property for sale, his act will be unauthorized by the power, and a sale made by him on written request, made not more than eleven days before the sale, may be avoided and set aside, as made in violation of the terms of the power.

4.   SAME—*absence of trustee from the State—what so regarded, so as to confer power upon another.*   A clause in a deed of trust that in case of the absence from the State of the trustee therein named when required to act, another person should be his successor, and invested with all his rights and powers to act, means a permanent absence from the State, and not a mere casual or temporary absence.

5.   SAME—*duty of trustee in conducting the sale—must act fairly.*   It is the duty of a trustee selling land under a trust deed, to use all reasonable efforts to procure the best price he can for the land sold.   If he states in the notice of sale that some other parties claim some interest of record in the land, which is not shown to be true, and the property is sacrificed, it can not be said that he has acted fairly, and a sale to one under whom he takes possession claiming to have purchased the land, may be set aside for the fraud on the rights of the debtor.

6.   REDEMPTION *from sale under trust deed—of the terms thereof—rents and profits—improvements.*   Where one, as an active manager of a trust company, through another, purchases land at a trustee's sale, for such company, and places another in possession of the premises, on bill to set aside the trustee's sale and deed for defect of power in the person making the sale, as trustee, and for leave to redeem from the trust deed, there is no error in stating the account of the sum due the company, to charge it with the reasonable rents and profits of the land until the possession is restored.

7.   In such case the party in possession will not be allowed to charge and receive pay for improvements made by him on the premises by cutting off timber on the same, especially when there is proof that such act is an injury to the land, and a waste.

8.   FORMER ADJUDICATION—*when not a bar.*   As a general rule a judgment or decree can be only pleaded in bar of a second suit, when the same question has been adjudicated and determined by a court of competent jurisdiction to try and decide the same.

9.   SAME—*judgment in forcible detainer—as affecting right of the defendant to question title by bill.*   A judgment of a justice of the peace, in an action of forcible detainer, in favor of the purchaser of land at a sale under a trust deed, against the former owner, giving the possession to the purchaser, is no bar to a bill by the former owner to set aside the trustee's sale and deed, and for leave to redeem from the trust deed, the question of the validity of the sale not being involved in the suit at law, the justice of the peace having no jurisdiction to determine whether the power of sale had been legally exercised.

APPEAL from the Circuit Court of Champaign county; the Hon. C. B. SMITH, Judge, presiding.

Mr. THOMAS THACHER, and Mr. J. S. WOLFE, for the appellants:

The essential things to effect a foreclosure were the publication of the notice, and the making of the sale and the receipt of the purchase price. *Heath* v. *Hall*, 60 Ill. 344.

Mere inadequacy of price is not ground for impeaching the sale, where no fraud is shown. *Wild* v. *Rees*, 48 Ill. 428; *Waterman* v. *Spaulding*, 51 id. 425; *Booker* v. *Anderson*, 35 id. 66.

It is no objection to the sale that the trustee making it afterwards acquired a contract for the purchase of the property. *Dempster* v. *West*, 69 Ill. 613; *Bush* v. *Sherman*, 80 id. 160.

If the objection is made that Bond, being a successor in trust, purchased, the proof is that he never acted under either of the deeds, and refused to act. 1 Leading Cases in Equity, 151, notes Hare & Wallace.

If the sale were irregular, complainants would be estopped by their delay from claiming to have the sale set aside. *Bush* v. *Sherman*, 80 Ill. 160; *McHany* v. *Schenk*, 88 id. 357; *Jenkins* v. *Pierce*, 98 id. 646.

The person creating a trust may mould it in such form as he pleases, and he may provide on a certain contingency the original trustee may retire, and a new one be substituted. Lewin on Trusts, 554; Perry on Trusts, sec. 287; *Ellis* v. *Boston, Hartford and Erie R. R. Co.* 107 Mass. 12; *National Webster Bank* v. *Eldridge*, 115 id. 424.

The validity of the foreclosure being involved in the forcible detainer suit brought for possession, the judgment for possession is a bar to this bill seeking to impeach the sale. *State* v. *Beloit*, 20 Wis. 79.

A valid judgment for the plaintiff sweeps away every defence that could have been raised,—and this, too, for the

purpose of every subsequent suit, whether founded upon the same or a different cause of action. 70 Ill. 378; 57 id. 244; 64 id. 33; *Kepley* v. *Luke,* 10 Bradw. 403.

The trust company was improperly charged with the rents and profits, as it never received any income from the land. 1 Edwards' Ch. 399.

The possession of Harmon is easily distinguished from that of a mortgagee who is the owner of the debt secured.

The master's report is wrong in not allowing to defendant Harmon $400 paid by him for clearing wood and brush land. He entered in good faith, believing himself to be the owner. (Jones on Mortgages, secs. 1115, 1117.) Nor is he to be treated as a trespasser. *Harper* v. *Ely,* 70 Ill. 581.

Mr. J. L. RAY, and Mr. C. H. CHITTY, for the appellees:

When Edwards accepted the office of trustee the title to the lands passed to him, and he could not divest himself of it or the duties of his trust without the consent of all parties interested, or by decree of court. 1 Perry on Trusts, secs. 259–261, 267, 268, 274, 401; 2 id. sec. 602; *Shepherd* v. *McEvers,* 4 Johns. Ch. 135; *Cruger* v. *Holliday,* 11 Paige, 314.

The power to create a new trustee in place of the original one can only be given by the author of the trust. 1 Perry on Trusts, sec. 287.

The renunciation or disclaimer of Edwards did not convey the title from him to Harmon. 1 Perry on Trusts, sec. 268; *Conyreham* v. *Conyreham,* 1 Ves. 522; *Cruger* v. *Holliday,* 11 Paige, 314; *Armstrong* v. *Merrill,* 14 Wall. 138; *Reed* v. *Truelove,* Amb. 417. But if Harmon was trustee at all he could not become a purchaser at his own sale, either directly, or indirectly through another. *Roberts et al.* v. *Fleming et al.* 53 Ill. 196; *Mapps* v. *Barbour,* 49 id. 370; *Pensonéau et al.* v. *Bleakley et al.* 14 id. 15; *Miles et al.* v. *Wheeler et al.* 43 id. 123; *Ogden* v. *Larrabee,* 57 id. 405; *Bush et al.* v. *Sherman,* 80 id. 161.

To avoid such a sale it is not necessary the trustee should have made any advantage in the purchase. 2 Sugden on Vendors, 412; *Davoue* v. *Fanning,* 2 Johns. Ch. 251; *Van-Epps* v. *VanEpps,* 9 Paige, 237; *Thorp* v. *McCullum et al.* 1 Gilm. 614.

Sales under power will be set aside upon very slight proof of fraud or unfair conduct, or of any departure from the terms of the power. 2 Perry on Trusts, 175; *Bloom* v. *Reuse et al.* 15 Ill. 507; *Longsmith* v. *Butler,* 3 Gilm. 32.

Fisher was entitled to the rents and profits from some one, and as the company procured and caused all the steps that put Harmon in possession, it should be held liable. It is also liable for the waste in cutting off the timber. An allowance for clearing land can not be made. The allowance of claims against the debtor for new improvements is never permitted, except under very extraordinary circumstances. 1 Johns. Ch. 387; *McConnel* v. *Holobush,* 11 Ill. 70; *Smith* v. *Sinclair,* 5 Gilm. 122.

Mr. Justice Walker delivered the opinion of the Court:

This was a bill in chancery, filed by appellees in the Champaign circuit court, to vacate and set aside the sale and conveyance of 246 acres of land, sold by a trustee under a trust deed.

It appears that in February, 1877, Septimus Fisher borrowed from the Equitable Trust Company $3000, payable in five years from date. He executed three notes, of $1000 each, and gave interest notes for seven per cent on the loan, payable semi-annually. To secure the payment of principal and interest, Fisher and wife executed a trust deed on the lands to Jonathan Edwards. The loan was made at nine per cent interest, and for the two per cent not included in notes and deed of trust there were given ten notes of $30, one falling due every six months. To secure their payment

13—106 Ill.

another deed of trust was given on the same land, subject to the first. It was to Edwards, his heirs and assigns. The deed, however, contained a provision that in case of Edwards' death, absence from this State, inability or refusal to act at any time when his action under the power of sale should be required, then H. R. Bond should be and was thereby appointed his successor in the trusts, with like power and authority, and the title to the premises to vest in him; and by another clause it was provided, that in case of the death of Edwards and Bond, their absence from this State, their inability or refusal to act when action should be required, then A. E. Harmon was to be successor in the trusts, with power to act and perform the trusts. On the 24th of July, 1880, Harmon advertised the property for sale, claiming there was a default in the payment of the first six notes described in the second deed of trust, and fixed the time of sale on the 26th day of August, 1880. On that day Harmon sold the property, and it·was bid in·by one Russell, at the request of Harmon, for Bond, his co-trustee, for the sum of $1200. Harmon executed a deed to Bond for the premises, and the former went into possession soon after, as it is claimed, under Bond, and has so remained ever since. It is claimed that Harmon, some time after going into possession, purchased the property from Bond, or the trust company. The bill alleges that Harmon acted without power, and that the sale by him was void; that the notice was defective, and that whilst the property was struck off to Bond, the sale was, in fact, to himself, and that inasmuch as he had no power to purchase at his own sale, it was voidable, and Fisher offers to redeem, and prays an account of rents and profits, and the amount due. On a hearing the court below granted the relief sought, by setting aside the sale and permitting a redemption by paying the balance due on the entire loan within four months. The court found the sum due $5223.76, and by the master's report that the rents, issues and profits

amounted to $1880.76, for which the trust company must account. From this defendants appeal.

It is admitted by a stipulation of record, that Edwards or Bond had not formally declined to act as trustee until the 15th of August, 1880, nor was there any written request for Harmon to act as successor in the trusteeship until that date; but it is stipulated that these papers were executed at that time, and were antedated, one to the 9th and the other to the 8th of June previous. These papers were then executed only ten days before the sale, and the deed of trust required at least thirty days' notice of the time and place of the sale by the trustee. The notice was dated July 24,—twenty-two days before the other trustees declined to act, and but eleven days after they declined before the land was sold. It is true that the person creating and declaring the trust may mould and give it any shape he chooses, and may provide for the appointment of a successor or successors to the trustee, upon such terms as he may choose to impose, and when imposed they must be pursued, to render the acts of the trustee valid. By this and like trust deeds the grantor conveys the legal estate to the trustee, to hold for the specified trusts, and he confers power on the trustee to execute and carry into effect the specific trusts. It is alone by force of the power delegated by the deed that the trustee can perform any act with reference to the trust property or fund, and in executing these powers he must pursue them, or his acts will be void.

If, then, in this case, Harmon had not become the successor of Edwards and Bond in the manner prescribed by the deed, he was devoid of all power, and the sale made by him was absolutely void for want of power,—as completely so as if made by a person not named in the deed. It is true Bond testifies that he and Edwards had informally declined to act in the early part of June; but he states no precise time, nor does he say they ever communicated the fact to the holders of the securities, to Harmon, or to any other person. Whether

it was an expressed declination Bond does not say. He gives no particulars or circumstances to enable us to determine whether it was to operate at that or some future time,— whether it was absolute or merely contingent. Bond and Edwards, it seems, knew that their declension was necessary, and that it should be clear, distinct and unequivocal before Harmon could exercise any of the powers conferred by the trust deed. They manifested such knowledge by executing the paper declining to act, and by antedating it, so as to apparently cover the time necessary to the thirty days' notice of the sale by Harmon. They thus resorted to a trick to give the transaction the appearance of conformity to the requirements of the deed, and it was an attempted fraud on the rights of Fisher,—an attempt to deprive him of his large and valuable property, of largely more value than the debt, in a mode not authorized by the trust deed, and contrary to its provisions. Such an act can never be sanctioned by the law.

Again, we have been unable to find any evidence that Harmon was called on to act as trustee until more than twenty days after he gave the notice. He had no authority to act until required by the holder of the indebtedness. It is provided in the deed of trust that the trustee having the power may act when there is a default, and such a request is made. Until such a request, Harmon, if otherwise competent, had no power to advertise when he did. He was not invested with that power more than eleven days before he sold the property, because before that time he was not invested with the powers of a trustee, nor was he required to advertise and sell the property. And this request to act was also a mere trick in fraud of Fisher's rights. He had the unquestioned right to insist that the property, when sold, should be by a person upon whom he had conferred the power, and not until a request was made by the holder of the indebtedness, and not until thirty days' notice of the sale given after the request was made.

Appellants rely on the refusal of Edwards and Bond to act, as conferring power on Harmon, and not on their absence from the State. It is true Bond testifies that neither of them was in the State during the months of June, July and August of 1880; but there is no evidence that they were permanently absent, nor had they refused to act until eleven days before the sale. A fair and reasonable construction of the language would require a permanent absence, and not a mere casual or temporary absence. Would any one imagine that a mere absence for a day, under such language, would vest the title in and authorize the successor to execute the powers of the trust? Such was manifestly not the purpose of the parties to this trust deed. Appellants gave it a different construction when they procured the written refusal of Edwards and Bond to act, and that construction is fair and reasonable, and is the true one.

Again, Harmon stated in the notice of the sale that the Singer company claimed some interest of record in the land. No such interest was shown on the trial. Why was it volunteered when it presumably is untrue? Manifestly to deter bidders, and depreciate the price of the property. Is this not strong evidence that Harmon had some interest or improper purpose in reducing the price? Nor did he state in the notice the amount claimed to be due on the indebtedness, as is explicitly required by the statute. Why this effort to depreciate the price of the property, unless it was to accomplish an unfair purpose? As a fair and honest trustee he surely would not gratuitously injure Fisher to obtain the land for the trust company for less than half its value. It was his duty to use all reasonable efforts to procure the best price he could for the land. Instead of doing so, he seems by fraud to have endeavored to obtain the smallest.

The judgment in the forcible detainer suit was pleaded, and seems to be relied upon as a bar to this proceeding. It seems to be urged with earnestness as forming a defence.

As a general rule a judgment or decree can only be so pleaded when the same question involved has been adjudicated and determined by a court of competent jurisdiction to try and determine the question. In that case the question of the right of possession was alone involved, and not the title. The statute has provided that a person who purchases at a sale under a power of sale in a mortgage or deed of trust, may recover possession in that form of action. The only issue to be tried by the justice of the peace was, whether Bond was the purchaser at the trustee's sale under a power contained in the trust deed. If it were found he was, and that Fisher was in possession, the justice was bound, under the statute, to render a judgment that Bond recover possession. This is the requirement of the statute. The justice had no jurisdiction to hear and determine whether the power had been legally exercised and the sale properly made, and had he attempted to decide that question he would have exceeded his power, and his finding in that regard would have bound no one. That judgment is not a bar, because the questions here presented were not, nor could they be, legally presented in the justice's court for determination.

It follows, from these considerations, that the court below did not err in setting aside the sale because it was made without power in the trustee. And this conclusion renders it unnecessary to consider any of the other questions urged by counsel, except the assignment of error on the decree against the trust company for rents and profits.

It is urged that the company is not liable because it has received no rents or profits, and that it has not, but Harmon has, occupied the farm. Bond swears he purchased through Russell, for the trust company. If so, in equity the title he acquired, whatever it was, belonged to the company. He brought forcible detainer, and recovered possession for the company. He was an officer and active manager of the company, and if he, as the managing officer of the com-

pany, placed Harmon in possession, it was the act of the company.

It is claimed that Harmon went into possession under an agreement to purchase from the company, and it is not, therefore, liable to account for rents. There is no evidence of the character of the contract,—whether it was legal and binding, absolute or conditional. Nor is it shown that the contract remained in force, or that it was soon thereafter canceled. Nor does it appear that Harmon has ever paid a dollar on the agreement, or can enforce the contract. The mere statement that he entered under an agreement to purchase, is too indefinite to release the company from liability. The company had the property bid in for its use. It placed Harmon in possession, and to escape liability to account it must show that Harmon was not liable to it for use and occupation. What has become of the agreement does not appear. For anything appearing in evidence the company may hold Harmon's obligation to pay every dollar of rent that was found against it. We are therefore of opinion that on the proofs in the case the company is liable to account. The company holding the title was bound to account for fair and reasonable rents received, or that could have been received by the exercise of reasonable diligence. It is not pretended that Harmon paid for the land, or holds a deed from Bond, or even has an obligation for its conveyance; and in the absence of all proof we must presume that none of these requirements to render a sale valid exist.

Again, it does not appear the company was free from the fraud that was practiced on Fisher in the effort to wrongfully deprive him of this property at a heavy sacrifice, and if guilty of or it participated in the fraud, it can not be heard to complain that it is held liable for the consequences of that fraud. All the steps taken to consummate the sale were inaugurated by the officers of the company.

It is also claimed that there should have been a credit of $400 allowed for improvements made by Harmon in clearing brush and timber land, preparing it for cultivation. Harmon had no right to make improvements without the consent of Fisher, and the credit can not be allowed. *Moore* v. *Cobb*, 1 Johns. Ch. 387, is a case in point; and the same rule has been established by numerous decisions of this court. It is true there are exceptions to the general rule, but only in rare cases and under extraordinary circumstances; but the facts in this case forbid it being made an exception. There is evidence that the removal of this timber was an injury to the farm, and if so it was waste, and it is believed that no case exists where compensation was allowed an occupant for committing waste.

The entire record considered we perceive no error requiring a reversal of the decree, and it is affirmed.

*Decree affirmed.*