## McNUTT et al., Appellants, v. MUTUAL BENEFIT LIFE INSURANCE COMPANY OF NEW JERSEY et al.

### Division Two, March 23, 1904.

1. **DEED OF TRUST: Title.** The trustee in a deed of trust given upon land to secure the payment of debts takes the title, which upon his death descends to his heirs.

2. ————: ————: **Default.** Where the title to the property once becomes vested in the trustee by default, it continues vested in him. until divested by some disqualification on his part mentioned in the instrument, such as removal from the State, death or refusal to act. And if it becomes vested in the sheriff, by default and the removal from the State of the trustee named, it does not become divested out of him by his going out of office, and become vested in the succeeding sheriff.

3. ————: ————: **Default: Extension.** And where the title becomes vested in the trustee because of default in the payment of the principal note, it is not divested by a subsequent extension of the time for the payment of that note.

4. ————: ————: ————: **Absence of Trustee: Successor: The "Then" Sheriff.** Where the deed of trust provides that upon default and the removal from the State of the trustee named in the instrument, "the then sheriff" shall succeed to his powers, etc., the sheriff who is such at the time of default after the trustee named takes up his permanent abode outside of the State, is meant, and not a subsequent sheriff who may happen to be such at a subsequent time when the holder of the note may request foreclosure.

Appeal from Jackson Circuit Court.—*Hon. Jno. W. Henry*, Judge.

REVERSED AND REMANDED.

*R. J. Ingraham* and *L. C. Slavens* for appellants.

(1) When by a deed of trust the parties contract that in case of the death or disqualification of the trus-

tee, the then sheriff of the county (whoever he may be) shall thereupon become his successor to the title, he acts as an individual, and not officially, and therefore, neither he nor his sureties are liable on his official bond for his abuse of such trust. Chase v. Davis, 88 Mo. 585; Harwood v. Tracy, 118 Mo. 631. The title which the then sheriff thus takes as an individual, and not officially, stays with him till it is divested by his death, or other disqualification, or by the payment of the debt. It is otherwise when he is appointed successor by the court, for in that case the statute makes it his duty to act as sheriff and he is liable on his bond. (2) By deeds of trust, in Missouri, the legal title is vested in the trustee, and not a mere lien, or power to sell. Shanewesk v. Hoberecht, 117 Mo. 22; Springfield v. Donovon, 120 Mo. 432; Hume v. Hopkins, 140 Mo. 65. By the same token, where the legal title is thus conveyed to the trustee to be held by him and his successor designated, in trust, with provision, as in this case, that in case of the trustee's death or disqualification, a person designated shall thereupon "become his successor to the title, and the same become vested in him in trust," then, in the contingency mentioned, the said successor takes the legal title in trust, exactly as it was held by the original trustee. And he takes it immediately upon his death, or removal, or other disqualification. (3) If the trustee dies (there being no provision for a successor), the title descends to his heirs. Jones on Mortgages, sec. 1790. (4) Under the provisions of this deed of trust, neither the original trustee nor his successor to the title could sell except on request of the holder of the note. The request does not confer upon the successor either the title to the property or the power to sell. It only evokes the power which the deed has already vested in him, along with the title to the property, the power to sue being coupled with the title.

*Joseph Morton* and *James A. Plotner* for respondent Life Insurance Company.

(1) Appellants' construction of the succession clause in the deed of trust does violence to the evident intent of the parties, as shown by the language of the clause. (2) The deed of trust, being only a contract, must be construed as any other contract and the intention of the parties, gathered from the whole instrument, will govern in ascertaining its meaning. Hanna v. South St. Joseph Land Co., 126 Mo. 1; Knapp v. Publishers, 127 Mo. 53. (3) That construction should be adopted which will make the contract effectual, and not such as to render it inefficacious. Leiweke v. Jordan, 59 Mo. App. 619. (4) The parties by the succession clause of the deed were evidently endeavoring so to provide for the succession that in any event there would be some one qualified to make a sale, if a sale should be necessary. (5) The word "absence" does not mean "removal," as appellants seem to understand. (6) The word "then" is used to make it clear that it is the sheriff who is in office at the time the request for sale is made, and not the one who is in office at the time of the execution of the deed. Were it not for this qualifying word, it might well be claimed that the parties had in mind the person who was sheriff when the deed was executed.

*Webster & Gilmer* for respondents McFarland and Heckel.

(1) The word absence as used in the succession clause does not mean non-residence. Elec. Co. v. Bry, 88 Mo. App. 135. (2) In construing ambiguous language in a contract, the intention of the parties governs and is to be gathered and determined from the nature and effect of the whole instrument in the light of the

surrounding circumstances, in contemplation of which the parties are supposed to have contracted. Torbert v. Jeffrey, 161 Mo. 654; Estes v. Desnoyers Shoe Co., 155 Mo. 584; Renn v. Supreme Lodge K. of P., 83 Mo. App. 446; Ins. Co. v. Redman, 91 Mo. App. 52. (3) In construing a contract, the court may take into consideration what may reasonably be presumed to have been in the minds of the parties, and to that end will put itself in the place of the parties and view the subject-matter from their standpoint. Hax & Bros. v. Hax, 84 Mo. App. 313; Jewelry Co. v. Bertig, 81 Mo. App. 399. (4) In construing a contract, usage and custom with regard to similar contracts and the construction put upon them by the bar in actual practice, will be considered. Carney v. Chillicothe Water and Light Co., 76 Mo. App. 536; Wilcox v. Baer, 85 Mo. App. 592; Baer v. Glaser, 90 Mo. App. 294; Fears v. Riley, 148 Mo. 49; Reddick v. Walsh, 15 Mo. 579; Thornton v. Thornton, 27 Mo. 302. (5) The default referred to in the succession clause means a default so treated by the *cestui que trust* and not a default consented to or waived by him. Albert v. Grosvenor Investment Co., L. R. 3 Q. B. 123; Whelan v. Riley, 61 Mo. 565; Phillips v. Bentz, 82 Mo. 639; Wolz v. Parker, 134 Mo. 458; State ex rel. v. Ross, 136 Mo. 259; Swon v. Stevens, 143 Mo. 384.

BURGESS, J.—The purpose of this action is to redeem from sale part of a city lot in Kansas City made under a deed of trust to secure the payment of a note for $1,200, payable July 1, 1890. The sale occurred on November 14, 1900, and the suit was brought to the next regular term of the circuit court thereafter of Jackson county.

Defendants demurred to the petition upon the ground that it does not state a cause of action. The demurrer was sustained, and plaintiffs declining to

plead further, judgment was rendered for defendants dismissing the petition, and against plaintiffs for costs. Plaintiffs appeal.

The deed of trust was executed on July 1, 1885, by Collin McNutt by which he conveyed the land in question to Samuel M. Jarvis in trust to secure to The Mutual Benefit Life Insurance Company the payment of said note. McNutt died in 1888, and thereafter his heirs at law paid the interest on, and secured extensions of said note until July 1, 1900, when default was made in the payment of the principal. The deed of trust contained the following provisions:

"If default be made in the payment of said note, or any part thereof, or any of the interest thereon when due, or in the faithful performance of any or either of the agreements as aforesaid, then the whole amount of said note, with interest thereon at ten per cent per annum from date, shall, at the option of the holder of said note, become immediately due and payable, and this deed shall remain in force, and the said party of the second part, or in case of his death, inability, refusal to act, or absence from Jackson county, then Roland R. Conklin, of the county of Jackson, State of Missouri, who shall thereupon become his successor to the title of said property, and the same become vested in him, in trust for the purposes and objects of these presents, or in case of the death, inability, refusal to act, or absence from Jackson county, of both said Samuel M. Jarvis and said Roland R. Conklin, then the (then) sheriff of said county of Jackson and State of Missouri (who shall thereupon become their successor to the title to said property, and the same become vested in him in trust for the purposes and objects of these presents, and with all the powers, duties and obligations thereof), may at the request of the holder of said note proceed to sell the property hereinbefore described."

"In 1893, Jarvis, the trustee, and Conklin his first successor, both left Missouri, and became residents of

New York City. At that time John P. O'Neill was sheriff of Jackson county, and continued to be sheriff until January 1, 1897, when he was succeeded by Robert S. Stone, who held the office until after the trustee's sale was made, November 14, 1900. On October 20, 1900, Jarvis and Conklin, being still residents of New York and absent from Missouri, the holder of the note, which had been then in default since July 1, 1900, requested said Stone, as substitute trustee, to advertise and sell the land under the deed of trust, and he did so, and Eva McFarland bought the land at trustee's sale, and afterwards sold it to Annie Heckel.

"Eva McFarland and Annie Heckel were both strangers to the deed of trust transaction. Plaintiffs do not allege any irregularity, fraud, unfairness or imposition in the trustee's sale. The sole question in the case is as to whether or not Robert S. Stone had any power to act as trustee."

It is insisted by plaintiffs that where in a deed of trust, as in the case at the bar, the parties contract that in case of the death or disqualification of the trustee named therein that the "then" sheriff of the county (whoever he may be) shall thereupon become his successor to the title, he acts as an *individual*, and not officially, and, therefore, neither he nor his sureties are liable on his official bond for his abuse of such trust. (Citing State ex rel. Chase v. Davis, 88 Mo. 585; Harwood v. Tracy, 118 Mo. 631.) That the title which the sheriff takes in such circumstances, he takes as an individual, and not officially, and it remains in him until divested by his death, or other disqualification, or by the payment of the debt. It is conceded to be otherwise, however, when he is appointed successor by the court, for in that case, the statute makes it his *duty* to act as sheriff, and he is liable on his bond for any malfeasance or misfeasance in office with respect to such trust.

From this premise it is argued that upon the removal of the trustee Jarvis and Conklin from the State,

or other disqualification to act, the title to the property at once vested in the *then* sheriff of the county, John P. O'Neill.

Upon the other hand, defendants contend that at the time Stone, who acted as trustee in the sale of the land, was requested to do so, Jarvis and Conklin were both absent from Jackson county, and that the words *"then"* and *"thereupon"* in the clause, "the (then) sheriff of Jackson county, who shall thereupon become successor," etc., might refer to any one of several different points of time, namely:

1. Any time when the trustee should die, become disabled, refuse to act or become absent from the county, without reference to default or requirement of sale.

2. Any time when a condition of default in the payment of the debt might coexist with the trustee's death, disability, refusal to act or absence, but without reference to any requirement of sale.

3. The time when default and requirement of sale might coexist with the trustee's death, disability, refusal to act or absence from the county.

The crucial question in this case is: To which of these times do the words "then" and "thereupon" refer, with reference to the trustee's absence?

It is well settled in this State that the trustee in a deed of trust given upon land to secure the payment of debts takes the title (Schanewerk v. Hoberecht, 117 Mo. 22; Springfield Engine and Thresher Co. v. Donovan, 120 Mo. 423; Hume v. Hopkins, 140 Mo. 65), which upon his death descends to his heirs. But as no such question is presented by this record, and as it is only referred to by way of argument, we will not give the question further consideration.

The language used in that part of the deed of trust quoted is somewhat ambiguous, and in arriving at the intention of the parties to it, we must give it a prac-

tical interpretation, as this is the proper way to arrive at such intent.

With this purpose in view it becomes material to ascertain at what time the powers of Jarvis and Conklin as trustees ceased.

The petition alleges "that at or near the end of the year 1893, and while the said John P. O'Neill was the sheriff of said Jackson county, and elected, qualified and acting as such sheriff as aforesaid, both the said Samuel M. Jarvis and the said Roland R. Conklin removed from said Jackson county, Missouri, to the State of New York, where they have ever since resided, and still reside." These allegations being material, stand admitted by the demurrer, and they sufficiently show a permanent absence from this State by them and not a mere casual or temporary absence. [Equitable Trust Co. v. Fisher, 106 Ill. 189; Farmers' Loan and Trust Co. v. Hughes, 11 Hun (N. Y.) 130.]

There can be no question but that, if the deed had provided that Conklin should become successor to the title upon the disqualification or absence from the county of Jarvis, the original trustee, and said nothing about a sheriff as such successor in the event of the removal of both Jarvis and Conklin from the county of Jackson, Conklin would have immediately upon the removal of Jarvis become his successor to the title of the property for all the purposes of the trust, and, as if in anticipation of such a possible event, the deed of trust provides that if both Jarvis and Conklin die, or remove from said county, then, the (then) sheriff of said county shall thereupon become their successor to the title to the property, and the same vested in him, in trust, for the purpose named in the deed. If we are correct in holding that Conklin took the title to the property in trust immediately upon the permanent removal of Jarvis from the county, it must logically follow, that O'Neill who was the sheriff of the county would likewise on the removal of Conklin from the county at once

become his successor to the title of the property, in trust, just as Conklin held it. That such was the intention of the parties to the deed is emphasized by the use of the word "then," between the words "then the" next preceding it, and the word "sheriff," next following it, so as to make it read "then the (then) sheriff," etc.

Moreover, the word "then" as used in the deed plainly had reference to whomsoever was sheriff of Jackson county at the time of any one of three things might occur, viz., the death of the then trustees named in the deed, the refusal by the trustee to act, or his absence from the county, and we are unable to see how such language could be construed as meaning a sheriff at a different time, or at any other period than that of the removal of Conklin from the county to reside elsewhere. To hold as defendants contend, would be to confer upon the holder of the note after default in its payment, and the removal of the trustee from the county, the power to make any sheriff of the county trustee by simply requesting him to act as such regardless of the length of time that might elapse after the execution of the deed of trust, provided the note was not barred by the statute of limitations at the time, something we are satisfied was never contemplated by the parties to the deed. Nor was any such authority conferred by the holder of the note.

The petition shows that default was made in the payment of the principal note in July, 1895, after both Jarvis and Conklin had removed to New York, and while O'Neill was sheriff of Jackson county, and while it does not allege in express terms that default in the payment of the note was made on the first day of that month, it does aver the five years' extension of the note until July 1, 1895, and that afterwards, about the 10th of July, 1895, the heirs of the mortgagor forwarded to the holder of the note in New Jersey their application for another extension, which was granted. It thus clearly appears that from the time of said ex-

tension, to-wit, July 1, 1895, to the end of said extension, the note was due and unpaid, and so remained for ten days, at least, before any arrangements were begun for another extension. That this was a default in the payment of the note we think clear; and during that time the holder of the note clearly had the right to request the "then" sheriff, O'Neill, to advertise the property for sale. And the title to the property, and the power of its disposal having once become vested in him, it there remains until divested by some disqualification upon his part.

It is doubtless true that the deed of trust might have been so drawn as to confer, in case of death or disability, refusal to act, or removal from the county of Jackson of the original trustee, the power to sell the property, upon any person who might be the sheriff, at any time after default in the payment of the note that its holder might desire under such a deed of trust; but it was not done in this case.

Our conclusion is that the sale of the property by Stone, as sheriff, was without authority, and that the demurrer to the petition should have been overruled.

The judgment is therefore reversed and the cause remanded.

All of this Division concur.