GATES v. NEWMAN ET AL.

[No. 1,972. Filed March 31, 1897. Rehearing denied Nov. 2, 1897.]

COURTS.—*Jurisdiction.—Presumption.—Foreign Judgments.*—An allegation in a complaint on a foreign judgment that the court in which such judgment was rendered was a court of general jurisdiction, is sufficient to raise the presumption that such court had jurisdiction of the subject-matter of the action and of the person of the defendant.   *pp. 393-396.*

SAME.—*Foreign Judgments.—Law of Other States.—Presumption.*—In an action in this State on a judgment obtained in another state it will be presumed, in the absence of any showing to the contrary, that the common law prevails in such state.   *p. 397.*

PARTIES.—*Dismissal as to One Party.—Amendment of Pleading.—Presumption.—Foreign Judgment.*—Where the record of a foreign judgment shows that the action was originally brought on a joint cause of action, but at the time of the trial the plaintiff dismissed as to one of the defendants, and the remaining defendant appeared and made no objection to the dismissal of the action as to his co-defendant, and the cause was tried on the theory that he was individually liable, it will be presumed that the pleading was so amended as to give the court jurisdiction of the subject-matter.   *pp. 397, 398.*

JUDGMENT.—*Transcript.—Admission in Evidence in Action on Foreign Judgment.*—An objection to the admission in evidence of the transcript of a foreign judgment in an action on such judgment, for the reason that the words "pending in said court," contained in such transcript, shows upon its face that it is still pending, is not well taken, as such words mean nothing more than that the cause was still pending in so far as the collection of the judgment was concerned.   *p. 398.*

SAME.—*Transcript.—Clerk's Certificate.—Foreign Judgment.*—The admission in evidence of the transcript of a foreign judgment in the trial of an action on such judgment is not objectionable for the reason that the clerk's certificate to such transcript shows that there was more than one defendant where such action was originally brought against two defendants jointly, and before trial dismissed as to one, and which shows that the plaintiffs and defendant are identical with the plaintiffs and defendant in the original suit.   *p. 398.*

FORMER ADJUDICATION. —*Foreign Judgment.—Answer. — Counterclaim.*—In an action on a foreign judgment rendered on a *quantum meruit* for legal services performed by the plaintiffs in such action an answer by the way of counterclaim, alleging that such judg-

ment defendant expecting to become the assignee of a certain company, employed plaintiffs to look after and control all legal matters pertaining thereto, and that such plaintiffs failed to inform defendant that, in order to bind the trust estate for attorney's fees a formal order of court should be made authorizing such employment, and that by reason thereof said judgment was obtained against defendant personally, is not a mere defense that should have been pleaded in the original action, and the issue raised by such counterclaim was not *res judicata.   pp. 399–412.*

From the Marion Superior Court.   *Reversed.*

*Baker & Daniels* and *Edward E. Gates,* for appellant.

*Charles Martindale,* for appellees.

ROBINSON, J.—This suit was brought in room three of the Marion Superior Court, by the appellees against the appellant on a judgment rendered by the circuit court of Cook county, Illinois.   A demurrer to the complaint for want of facts was overruled, and an answer and counterclaim in three paragraphs filed by appellant.   A demurrer was sustained to the second paragraph, and overruled as to the third.   Appellees filed a reply in two paragraphs to the third paragraph of the answer and counterclaim.   The cause was then transferred to another judge presiding in room one of said court, where there was a trial by jury, and under an instruction by the court to that effect, a verdict was returned in favor of appellees.   Over appellant's motion for a new trial, judgment was rendered on the verdict for $1,450.00.

The errors assigned are, the overruling of the demurrer to the complaint, sustaining appellees' demurrer to the second paragraph of appellant's answer and counterclaim, and the overruling of the motion for a new trial.

The complaint contains the following averments: "The plaintiffs, complaining of the defendant, say that heretofore, to wit: on the 15th day of July, 1893,

in the circuit court of Cook county, in the State of Illinois, at a term thereof begun and held in Chicago in said county and state, on the third Monday, being the 19th day of June, in the year of our Lord eighteen hundred and ninety-three (1893), the same being a court of general jurisdiction, said plaintiffs recovered a judgment against said defendant herein for the sum of thirteen hundred dollars ($1,300.00), together with costs and charges in that behalf expended; that said judgment is unpaid, unappealed from, unreversed and not superseded and is in full force and effect, and that there is now due and unpaid to plaintiffs thereon the sum of, to wit: fourteen hundred dollars ($1,400.00). Wherefore, plaintiffs pray judgment against the said defendant herein for the sum of fourteen hundred dollars ($1,400.00) and costs."

Appellant's counsel insist that the complaint does not show that the circuit court of Cook county had jurisdiction of the person of the defendant in that suit.

It has been held that notwithstanding that provision of the constitution of the United States that "full faith and credit shall be given in each state to the public acts, records and judicial proceedings of every other state," the jurisdiction of the court rendering a judgment in any state may be questioned in a collateral proceeding and that the jurisdiction of a foreign court over the person or the subject-matter is always open to inquiry. *Grover, etc., Machine Co.* v. *Radcliffe*, 137 U. S. 287.

For the purpose of the demurrer to the complaint, it is admitted that the Illinois court rendering the judgment is a court of general jurisdiction.

One of the leading cases in the United States on the subject of the presumptions in favor of the jurisdiction of a court, is *Galpin* v. *Page*, 18 Wall. (U. S.) 350, in

which it is said that "A superior court of general jurisdiction, proceeding within the general scope of its powers, is presumed to act rightly. All intendments of law in such cases are in favor of its acts. It is presumed to have jurisdiction to give the judgments it renders until the contrary appears. And this presumption embraces jurisdiction not only of the cause or subject-matter of the action in which the judgment is given, but of the parties also."

In the case of McLaughlin v. Nichols, 13 Abb. Pr. 244, cited by appellant, there was no averment that the court rendering the judgment had or obtained jurisdiction of the person of the defendants, nor did the complaint aver the fact of the existence of a general jurisdiction in the court, or of a limited jurisdiction which extended to the cause of action for which the judgment was recovered. So, in the case of Gebhard v. Garnier, 12 Bush. 321, there was no averment in the complaint about the jurisdiction of the court rendering the judgment, nor was there any averment that the court was one of general jurisdiction. The case of Ashley v. Laird, 14 Ind. 222, was a suit on an Iowa judgment. At that time in bringing suit on a judgment it was necessary to make the transcript of the judgment a part of the complaint. But the record there set out contained none of the pleadings, nor did it in any manner disclose what was the cause of action or the subject of the controversy. This case, however, holds that where the subject-matter of the suit appears, and the court rendering the judgment is one of general jurisdiction, it may, perhaps, be presumed that the court had jurisdiction of the subject-matter thus appearing.

In cases of domestic judgments of courts of general jurisdiction, where they come collaterally in question, the rule is that where the record discloses nothing

upon the subject, jurisdiction of the person and of the subject-matter will be presumed. *Horner* v. *Doe*, 1 Ind. 130, and cases cited.

"Any proceeding to have a judgment declared void, on account of matters not appearing on the face of the record, is a collateral attack on the judgment." *Lewis* v. *Rowland*, 131 Ind. 103; *Exchange Bank* v. *Ault*, 102 Ind. 322; *Harman* v. *Moore*, 112 Ind. 221.

Whether the judgment on which suit is brought is a foreign or domestic judgment, the same rule applies as to necessary averments in the complaint. In 2 Freeman on Judgments (4th ed.), section 453, the learned author says: "The presumptions in favor of jurisdiction are the same whether the judgment relied upon is domestic, foreign, or of one of the sister states of this Union. The allegations in a complaint seeking to recover upon a judgment rendered in another state need not differ from those in a complaint on a domestic judgment. Neither the authority of the court to act, its jurisdiction over the subject-matter, nor the steps taken to acquire jurisdiction over the parties, need be stated." 2 Black on Judgments, section 835, and cases cited.

We think the allegations in the complaint that the circuit court of Cook county in the state of Illinois, was a court of general jurisdiction, is sufficient to raise the presumption that the court had jurisdiction of the subject-matter and of the person of the defendant. Whether that presumption might be overcome, and if so, in what manner, would present a very different question from that raised by the demurrer to the complaint.

A demurrer was sustained to the second paragraph of appellant's answer, and this ruling is assigned as error. It is alleged in this paragraph of answer that the declaration in the circuit court of Cook county,

Gates v. Newman et al.

Illinois, was a common count for work and labor, and that Alfred B. Gates and Harry B. Gates were joint defendants and charged as liable jointly; that to this declaration Harry B. Gates pleaded an answer of *non-assumpsit*, and the issue thus joined remained unchanged until the day of trial, "on which day the plaintiff in said action in said Cook county circuit court dismissed said action as to the said defendant, Alfred B. Gates, he not having been served with process in said court and not having appeared therein in person or by attorney, and after the dismissal of said action as to said Alfred B. Gates the court proceeded to the trial of said action upon the theory that the declaration charged a several and individual liability against the said Harry B. Gates, and the trial proceeded upon that theory, and no other." * * *

The contrary not having been shown it will be presumed that the common law prevails in the state of Illinois. The suit was originally brought on a joint cause of action, but at the time of the trial, as disclosed by this paragraph of answer, it had become a suit against Harry B. Gates alone, and proceeded to judgment upon that theory. This paragraph of answer shows that the appellant appeared and joined issue on a plea of *non-assumpsit*. It does not appear that he made any objection to the dismissal of the action as to his co-defendant, and the court having the power to permit the declaration to be amended, it will be presumed the amendment was made. It is true, as claimed by appellant's counsel, that jurisdiction of the person may be given by consent of the parties, and that jurisdiction of the subject-matter cannot be so given; but where it is disclosed that appellant entered a general appearance, and with no objection on his part the cause was tried on the theory that he was individually liable, it will be presumed that the pleading was so

amended as to give jurisdiction of the subject-matter. 1 Black on Judgments, section 264; *Reynolds* v. *Stockton*, 140 U. S. 254; *Warren* v. *Glynn*, 37 N. H. 340.

The first reason assigned for a new trial was error of the court in admitting in evidence the transcript of the Illinois judgment. The first objection to the transcript is that it shows upon its face a matter still pending in that court. The transcript itself shows that a final judgment was entered, and the judgment not having been satisfied at the time the transcript was made, the words "pending in said court" could mean no more than that the cause was still pending in so far as the collection of the judgment was concerned. Thus it is held that "pending" applies to a judgment on which successive *fieri facias venditionis* have been issued, but not fully satisfied, and that although judgment has been recovered, the action is pending as long as the judgment remains unsatisfied. *Ulshafer* v. *Stewart*, 71 Pa. St. 170; *Wegman* v. *Childs*, 41 N. Y. 159; *Mitchell, etc., Furniture Co.* v. *Sampson*, 40 Fed. 805.

Objection is also made that the clerk's certificate authenticates a cause "between Jacob Newman et al., plaintiffs, and Harry B. Gates et al., defendants," and that these words import a cause in which there are two or more plaintiffs and two or more defendants. It is disclosed by the record that the plaintiffs and the defendant in this case are identical with the plaintiffs and the defendant in the cause in the Illinois court. The objection here goes only to the clerk's certificate, while in the case of *Suydam, Sage & Co.* v. *Aldrich*, 3 McLean 383, cited by appellant, the declaration stated that the judgment had been obtained for a certain amount, and the record of the judgment introduced as evidence showed a different amount, which was held a fatal variance.

The question involved in appellant's objection to the admissibility of the transcript, on the ground that the record shows that the court did not have jurisdiction of the subject-matter, is practically the same as that arising on the demurrer to the second paragraph of appellant's answer. In addition to what we have said concerning the ruling on the demurrer, we think it sufficient to say in reference to this objection, that the record of the Cook county judgment recites that when the case was called for trial the parties appeared and " it is ordered that all papers and proceedings herein, be and they are hereby amended by discontinuing as to defendant A. B. Gates, thereupon on the agreement of said parties, made in open court, this cause is submitted to court for trial without a jury."

The remaining causes for a new trial, except the last, all relate to the refusal of the court to permit any evidence whatever by the appellant in support of the third paragraph of his answer or counterclaim.

This paragraph is quite long, but alleges substantially that the appellant, expecting to become the assignee of a certain company, retained the appellees to look after, direct and control all legal matters of whatever kind and nature it would be necessary and proper for him as such trustee to have looked after, directed and controlled by a competent lawyer or lawyers; that the appellees acted as appellant's attorneys as such trustee, but never informed the appellant that it was the law of the state of Illinois that a trust estate could only be made liable for the payment of legal services rendered to any trustee by a formal order authorizing the employment of an attorney; that the appellees afterwards obtained a judgment against appellant for services rendered to him in the matter of such trust, and that this judgment is the judgment sued on in this cause; that the failure of appellees to

procure an order authorizing appellant as trustee to employ counsel for legal advice and services, and their neglect to inform appellant that such order was necessary for his protection, was the sole cause of the rendition of such judgment; and that by the rendition thereof appellant was damaged not only the amount of such judgment, interest and costs, but in the amount of his attorney's fees and expenses of trial. It is also alleged that but for the improper conduct of appellees in giving legal advice to appellant, there would have been assets sufficient to pay appellant. The acts constituting the alleged improper conduct are particularly set out and consisted chiefly in "by-bidding" by appellees at the sale of the trust property. The paragraph asks affirmative relief.

If this paragraph of answer or counterclaim was *res judicata* there was no error in excluding the evidence offered by appellant, and if it was not *res judicata* the cause must be reversed.

As to what was in issue when the Illinois judgment was rendered must be determined by the pleadings. *Sharkey* v. *Evans, Admr.*, 46 Ind. 472.

That suit was brought upon a *quantum meruit* for services rendered by appellees as attorneys to the appellant under a general retainer, by which he retained appellees to perform for him certain legal services. To this declaration the appellant filed the plea of *non-assumpsit*, or general issue.

To recover under this declaration it was essential for the appellees to prove that the services rendered by them were valuable, and also what their reasonable value was. "If the plaintiff sue upon a *quantum meruit*, the very form of his own declaration gives him notice that the adequacy of the consideration may be disputed." *Basten* v. *Butter*, 7 East. 479; see 2 Smith's Leading Cases, Hare & Wallace's Notes, p. 62.

It has been decided in this State that in an action to recover compensation for professional services, negligence and unskilfulness in the performance' thereof may constitute matters of counterclaim, which could not be but by recognizing the claim for the services as valid, except as it is overcome by the cross-demand. *Reilly* v. *Cavanaugh,* 29 Ind. 435; *Nave* v. *Baird,* 12 Ind. 318.

In the early case of *Fischli* v. *Fischli,* 1 Blackf. 360, 12 Am. Dec. 251, it was said: "Whenever a matter is adjudicated, and finally determined by a competent tribunal, it is considered as forever at rest. This is a principle upon which the repose of society materially depends; and it therefore prevails, with a very few exceptions, throughout the civilized world. This principle not only embraces what actually was determined, but also extends to every other matter which the parties might have litigated in the case." After quoting the above, Elliott, J., in *Ulrich* v. *Drischell,* 88 Ind. 354, says: "The general doctrine so firmly settled cannot be disturbed, and the inquiry is as to its applicability to the present case. It is, however, a general rule to which there are marked exceptions. * * * Much as the question of former adjudication has been discussed, there is still much confusion in the authorities. Some of the cases say that it is conclusive only as to such issues as were presented by the pleadings; but this, it is evident, is not strictly accurate, as may be irrefutably established by a familiar example. Suppose that A sues B on a promissory note; the latter answers failure of consideration, and judgment goes against him; can there be a doubt as to that judgment concluding B from afterwards insisting that the note was discharged by payment? * * * "It is incontestably true, therefore, that questions

are sometimes settled by a judgment which are not made issues by the pleadings. It is not universally true, on the other hand, that where a party has an opportunity to litigate a question and neglects to avail himself of it, that the judgment is conclusive. Suppose, for illustration, that A sues B on a promissory note, and that the latter, at the time, holds a note against A, and pleads payment only, and is defeated. Can it be doubted that B may afterwards sue on the note held by him against A?"

In *Kilander* v. *Hoover*, 111 Ind. 10, where a suit had been brought upon a part of a series of promissory notes given for the purchase price of land, the others not being due, and the defendant's answer set up facts showing a failure of the consideration of the notes sued on only, but asking that the whole series be declared satisfied, and a judgment was rendered for the defendant, it was held that that judgment was not a bar to a proceeding upon the remaining notes, and that a suit based on that judgment to obtain the cancellation thereof would not lie. Mitchell, J., speaking for the court, said: "Unless, however, it is made to appear that the defenses pleaded to the first claim, or demand, involved the whole title, or extended to the whole subject-matter, of the controversy between the parties, so as to litigate and determine the defendant's liability in respect to the whole transaction, then the judgment is a finality only as to so much of the claims and defenses as was actually litigated in the first suit."

Counsel for appellees have cited a number of New York cases in which it is held that in an action to recover compensation for medical or surgical services rendered by the plaintiff, wherein a judgment is given in his favor, the question of the skill and care of the surgeon or physician is necessarily adjudicated. These

cases proceed upon the theory that malpractice can be of no value, and if the physician or surgeon recover a judgment for services, that judgment is inconsistent with the existence of malpractice, and the former judgment for services may be pleaded to an action for malpractice without reference to whether the negligence and unskilfulness of the physician was specially pleaded in the action for services, or whether there was any issue presented, or a default.

This doctrine has never been recognized as the law in this State, but our courts have uniformly declined to follow it. In *Goble* v. *Dillon*, 86 Ind. 327, 44 Am. Rep. 308, the court said: "In New York *res judicata*, as to the negligence and unskilfulness, is made to depend upon the former judicial determination of the question of the value of the services, in the absence of any necessary consideration of the injury to the defendant, which, if considered, but not otherwise, would have led to a determination that the services were valueless. Such an estoppel may well be characterized as odious. One is struck with the frequency with which, in the reported cases, the suits for the services have been brought after the commencement of the actions for malpractice, as if for the purpose, which is sometimes declared, of preparing a defense for those actions. We have spoken of the hardship which may be imposed upon the plaintiff in the action for malpractice, if he be required at all events to defeat the claims for professional services. We are unwilling to extend the estoppel beyond the requirement of established principles."

But it is earnestly insisted by appellant's counsel that the negligence and wrongful acts of which the appellant complains in his counterclaim was, in addition to appellees' alleged fraudulent "by-bidding," their neglect to procure a proper order of the Lake

County Court, having jurisdiction of the assignment of the American Motor Company, which would protect appellant from personal liability for the services that were validly and properly rendered the trust estate, and for which they obtained a personal judgment against the appellant. In other words, the matter set out in the counterclaim would not go to defeat the appellees' right to recover the value of services actually rendered, and that the measure of his damages under such counterclaim would not be limited to the amount of the judgment obtained against him, but would include the amount of such judgment, together with the costs he was put to in defending the suit and like matters.

In the case of Goble v. Dillon, supra, which counsel for appellant, as well as counsel for appellee, in their respective briefs, discuss at length, the appellant Goble sued Dillon and one Hobbs for malpractice as physicians. In his second paragraph of answer, Dillon alleged, in substance, that he and his co-defendant, the latter to aid and assist, were each separately and for himself employed by the appellant, and that on the 2d day of October, 1880, before a certain justice of the peace, this defendant filed his complaint, setting forth therein that the appellant was then and there indebted to this defendant in the sum of $65.00; that this demand was made for and on account of said services, care, skill, and diligence by this defendant bestowed in and upon the adjusting, setting, treating, and curing of said broken leg; that when the cause came on for trial before the justice, the appellant appeared thereto, and for answer to the complaint alleged "that said services mentioned in said complaint, and for which judgment was therein asked for said sum of sixty-five dollars, by and in favor of this defendant and against said Goble, were entirely worth-

Gates v. Newman *et al.*

less and of no value whatever." It is held in the opinion that this answer of Goble amounted to a special denial of the value of Dillon's services so pleaded as to avoid a negative pregnant, and that besides this special denial it must be considered that the general denial was also in. After stating that a final judgment of a court having jurisdiction, rendered upon the merits of the cause of action and still in force, when specially pleaded, concludes the parties to an issue thereby determined, and their privies as to each other, from litigating the same cause of action in a collateral proceeding, Black, C., speaking for the court, said: "That there may thus be *res judicata*, the particular controversy sought to be concluded, the allegation which is the foundation of the second action, must have been involved in the former action so that it must or might have been tried and determined. If so involved, it will be presumed to have been determined. What was so involved in the former case must be determined from its pleadings. *Sharkey* v. *Evans*, 46 Ind. 472; *Bottorff* v. *Wise*, 53 Ind. 32; *Griffin* v. *Wallace*, 66 Ind. 410. A final judgment settles and concludes every mere defense that was or might have been urged against the cause of action upon which it is based, whether there was an answer setting up a defense or the judgment was rendered upon default; but it is not conclusive as to a cross action, that is, an independent, affirmative cause of action in favor of the defendant against the plaintiff, unless that cause of cross-action was, in fact, involved in the issues of the former case, either as a set-off, a counterclaim or a defense. *Green* v. *Glynn*, 71 Ind. 336; Bigelow Estoppel (2d ed.), 20, 101, 107."

In that case, as we have seen, in the judgment pleaded there had been a special answer, and also the general denial so far as Dillon was concerned. In the

judgment pleaded by Hobbs it did not appear that there was any pleading for the defendant, or that he appeared, and it was considered that in the action of Hobbs for services the judgment was rendered upon default. In the reply to the second paragraph of Dillon's answer it appeared that action was pending in the circuit court, and that Dillon had been duly notified of the pendency thereof by the service of the necessary process, and had been summoned to appear and answer before the suit mentioned in the second paragraph of Dillon's answer was commenced, tried or adjudicated, and in the reply to the first and second paragraphs of the answer of Hobbs the same was alleged, except that it was alleged in addition that Hobbs had appeared to the action in the circuit court before the commencement of the suit before the justice. It was held that the reply to Dillon's answer was bad, and that to the answer of Hobbs would have been an insufficient reply to a good answer. In speaking of this branch of the case, the court said: "If the appellees had independent causes of action for their professional services against the appellant, and their claims were due, they had the right to have them adjudicated in any court of competent jurisdiction. To sue upon them, they must have done so in another action than that brought by the appellant, who can not, in this action, on the ground of the prior pendency thereof, deny the right of the appellees to bring their actions before the justice."

The point involved and decided in that case was, that in an action before a justice of the peace, malpractice may be proven under the general denial, and the defense of malpractice not being one which the statute concerning justices requires to be specially pleaded, if there is an appearance and trial, and judgment is given against the defendant on the merits, it will be

Gates *v.* Newman *et al.*

presumed, in a collateral proceeding between the same parties, that such matter was litigated as a defense because it was provable, whatever the character of the answer, or without any answer. This is clearly the law in this State.

We do not think the allegations of the third paragraph of answer and counterclaim of appellant Gates are matters of mere defense. This paragraph does not deny that the services to the trust estate were valuable. There is nothing in it inconsistent with a recovery by appellees for the full value of their services to the trust estate. The matters therein set out do not go to show that the services were without value, nor that they were not due, but that there was a failure and neglect on the part of the appellees to protect appellant from personal liability. If appellant was damaged the amount of the recovery for the services would not neessarily be the measure of such damages. This paragraph is based upon a breach of the contract by which appellees were to give appellant all necessary legal advice in the matter for which they were employed. In Bigelow on Estoppel (5th ed.), p. 182, it is said: "If there is an independent cause of action to each party upon a breach of the contract by the other, neither in reason can be compelled to allege his defense of a breach in a suit by the other. Every cause of action carries with it the right to put it into judgment; and that there is a separate and independent cause of action given to each party results necessarily from the fact that either party may sue the other for a breach. * * * The defendant in the first action may not then be able to prove the facts which he relies upon in the second suit; and he is justified in reason in not raising an issue upon them. The contrary doctrine would often work manifest injustice."

A well founded distinction is laid down in the books

between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or cause of action, and its effect as an estoppel in another suit, between the same parties, upon a different claim or cause of action. Thus it is said in *Cromwell* v. *County of Sac.*, 94 U. S. 351: "In the former case, the judgment, if rendered upon the merits, constitutes an absolute bar to a subsequent action * * * concluding parties and those in privity with them not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matters which might have been offered for that purpose. * * *

"But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been there litigated and determined." This rule was followed in *Riverside Co.* v. *Townshend,* 120 Ill. 9, 9 N. E. 65. See Bigelow, Estop. (5th ed.), p. 152, *et seq.*, and p. 188, *et seq.*

In *Equitable Trust Co.* v. *Fisher,* 106 Ill. 189, where a purchaser at a sale under a trust deed had brought an action of forcible entry and detainer against the grantor in possession, and judgment rendered in favor of the purchaser, the court, in holding that such judgment in the forcible detainer suit was not a bar to a bill filed by such grantor to set aside the sale and judgment against him, said: "As a general rule a

judgment or decree can only be so pleaded when the same question involved has been adjudicated and determined by a court of competent jurisdiction to try and determine the question. In that case, the question of the right of possession was alone involved, and not the title."

In the case of *Bridges* v. *Paige,* 13 Cal. 640, cited by appellees, it was held that "anything which shows that the plaintiff has not the right of recovery at all, or to the extent he claims, on the case as he makes it, may be given in evidence upon an issue joined by an allegation in the complaint, and its denial in the answer." It was held in that case, that under the general issue it was proper to show the negligence and unskilfulness of the attorneys in conducting the case in court. But that case further holds: "Where, however, something is relied on by the defendant which is not put in issue by the plaintiff, then the defendant must set it up. That is new matter—that is, the defendant seeks to introduce into the case a defense which is not disclosed by the pleadings."

In *Ressequie* v. *Byers,* 52 Wis. 650, in a suit for malpractice, the defendant pleaded a judgment for the value of services before a justice of the peace, where the defendant was served with process, and appeared and answered, denying the allegations of the complaint, but at the trial before the justice the defendant did not appear, the court said: "It is very doubtful whether the defendant, in the action before the justice, under his answer, could have shown that the plaintiff was guilty of malpractice (*Crawford* v. *Earl,* 38 Wis. 312); certainly, he did not attempt to raise that issue, or litigate any such question. And if this action is barred by the recovery in the justice's court, it is because the question as to the care and skill of the defendant herein was involved by implication in

that suit, not because any such fact or issue was actually litigated between the parties.    *    *    *

"The issue in this action was not necessarily involved in the justice's court, and the plaintiff may maintain it notwithstanding the defendant recovered for his services in that court.  The plaintiff's claim for damages resulting from malpractice constitutes a separate and independent cause of action, which he can enforce without disturbing any matter litigated in that case."

The Supreme and Appellate Courts of this State have uniformly held that a former judgment is a bar to any mere *defense* that was or *might* have been pleaded in the former action; but the adjudications, as well as the statute, permit a defendant to plead his cross-demand or not, as he chooses, and the cases hold if the cross-demand was in fact actually involved in the former action, no matter in what form, it is barred by the judgment.  And in holding that the matters set up in appellant's counterclaim are not necessarily adjudicated in the former suit, and that the evidence offered in support of the counterclaim should have been admitted, we think we are fully sustained by the case of *Goble* v. *Dillon, supra,* wherein it is said that a final judgment "is not conclusive as to a cross-action, that is, an independent, affirmative cause of action in favor of the defendant against the plaintiff, unless that cause of cross-action was, in fact, involved in the isues of the former case, either as a set-off, a counterclaim or a defense." See *Brower* v. *Nellis,* 6 Ind. App. 323; *Schwinger* v. *Raymond,* 83 N. Y. 192.

Applying to the third paragraph the principles of the common law, the matters therein set out could have been pleaded by way of recoupment.  It asks for damages, unliquidated, resulting from the breach of

the contract sued on in the Illinois judgment. It does not go to the value of the services, and is not a defense to that action. The law implies a promise on the part of the attorney that he will conduct the business entrusted to him with a reasonable degree of care. In 2 Chitty, Contracts (11th Am. ed.), 813, the author says: "But the earlier cases did not afford a very satisfactory answer to the question, whether an attorney's negligence or unskilfulness constituted a defense to an action by him for his bill; or whether they merely form matter for a cross-action against him. It seems to be now settled, however, that the negligence or unskilfulness of the attorney do not afford a complete defense to such an action, unless, by reason thereof, the client has obtained and can obtain no benefit whatever from his services; and that where some benefit has accrued, or may arise from the exertions of the attorney,—although a part of the advantage which might have been secured is lost by his default or misconduct,—this shall merely go to reduce the amount of his demand." *Randall* v. *Ikey*, 4 Dowl. Practice Cases, 682.

Thus it was held that negligence by an attorney is an admissible defense under *non-assumpsit* to an action on his bill, provided the work became wholly useless in consequence of that negligence. *Bracey* v. *Carter*, 12 Ad. & El. 373; 1 Chitty on Pleading, 495; Pom. Rem., sections 731-733.

In the case at bar the negligence of the appellees, as set out in the third paragraph, would not have been admissible under the general issue, for the reason that it could have nothing to do with the value of appellees' services. It would have tended to defeat neither the whole nor a part of the value of such services. It states no mere defense, but purely a cross-action which has always been allowed at common law

in cases where recoupment may be proper. *Mimnaugh* v. *Partlin*, 67 Mich. 391, 34 N. W. 717.

In holding that the pleading states something more than a mere defense, it follows that it cannot be said that under the general issue the matter was necessarily adjudicated. If it was in fact adjudicated, it cannot be litigated again; but whether it was in fact so adjudicated must be determined upon the trial.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.


DISSENTING OPINION.


BLACK, J.—In the opinion adopted by the majority of the court, there is no expressed purpose to antagonize in any way the decision in *Goble* v. *Dillon*, 86 Ind. 327; but, on the contrary, there is manifested an intention to decide in accordance with that case, and it appears to be supposed that it supports the conclusion reached in the case at bar upon the subject of *res judicata;* yet this conclusion is in conflict with the decision of the Supreme Court in that case. Therefore I am constrained to dissent from the conclusion reached by my brethren.

The particular passages quoted by my learned brother from the opinion in *Goble* v. *Dillon, supra,* of course, should be interpreted with reference to the decision of the matter to which the argument related. The case is authority for what was decided. The matter there decided, pertinent to the case at bar, was, that the second paragraph of the answer of Dillon showed a good defense to the complaint of Goble.

In *Goble* v. *Dillon, supra,* the court refused to extend the estoppel to the degree to which it had been extended in the cases cited in the New York Court of Appeals. In the criticism of certain New York cases,

the adverse remarks were expressly limited to the cases in the Court of Appeals of that state. Reference was made to the case of *Bellinger* v. *Craigue*, 31 Barb. 534, but the conclusion reached in it was not criticised.

If, in *Goble* v. *Dillon, supra,* the doctrine of the cases referred to in the New York Court of Appeals had been adopted, our Supreme Court would have held Goble to be estopped by the judgment recovered against him on default by Hobbs. Our court refused to go to that extent.

In *Goble* v. *Dillon, supra,* it was decided that, in the state of facts shown by the answer of Dillon, it would not merely be presumed (as stated in the principal opinion herein) that the matter of malpractice was litigated as a defense, but also that as a cause of action by Goble against Dillon it was *res judicata.*

It is said in the principal opinion that the paragraph of answer under discussion does not deny that the services of the appellees to the trust estate were valuable, and that there is nothing in it inconsistent with a recovery by appellees of the full value of their services to the trust estate. The pertinence of this statement is not clearly apparent. Without admitting or denying what is there stated, or going into the subject, it may be said that the judgment sued on was obtained against the appellant personally, and that it is sought to set up against it "failure and neglect on the part of the appellees to protect the appellant personally."

If the above mentioned statement in the principal opinion be intended to indicate that the counterclaim under discussion contains any matter that could not have been set up by way of counterclaim in the action in which the judgment was obtained in the sister state, it is not apparent how it has become matter for counterclaim in the suit on that judgment.

But I do not understand the principal opinion in this case to proceed (at least in the first instance) upon the theory that the matter set up in the counterclaim in this action upon the judgment could not have been set up as a counterclaim in the action in which that judgment was obtained. Such an idea is not carried out and definitely asserted; but it is stated that the matters set out in the counterclaim could have been pleaded by way of recoupment, and that the counterclaim asks damages for the breach of the contract sued on in Illinois, and the opinion seems to proceed upon the theory that, if the matter here set up by way of counterclaim was involved in the issue in the former action as a defense only, it can now again be brought forward for readjudication under a counterclaim, it being assumed that, if it was involved in the issue as a defense only, it is not to be presumed that it thereby became *res judicata*, so as to prevent its becoming again involved when pleaded as a counterclaim against the judgment rendered for the plaintiff in the action where it was involved in the issue as a defense.

But, after seeming to proceed upon such theory, it is in the end stated that the matter could have been pleaded by way of recoupment, at common law, which, of course, is presumed to prevail in Illinois, and that the negligence set out in the counterclaim would not have been admissible under the general issue, and that, although it could have been pleaded by way of recoupment, it would have tended to defeat neither the whole nor a part of the value of such services.

To be proper matter for recoupment, the defendant's claim must have arisen out of the same transaction, the same subject-matter as the plaintiff's claim, and the damages must have been such as the defendant could have recovered in a cross-action against the

plaintiff. The plaintiff's conduct must have been the cause of the injury for which the defendant seeks to recoup. 22 Am. and Eng. Ency. of Law, 340, *et seq.*

Recoupment is properly applicable where the same contract imposes mutual duties and obligations, and one party seeks a remedy for the breach of the duty by the second, and the second meets the demand by a claim for a breach of duty by the first. It is a keeping back of something alleged to be due, because there is an equitable reason for withholding it. Anderson's Law Dict., title "Recoupment."

In 21 Am. and Eng. Ency. of Law, 224, under the title "Cross-Claims, Set-Offs, and Recoupments," it is said: "Where a defendant has any of these defenses or claims, he may set them forth and prove them in an action against him, if they have to do with the same subject-matter, but it is generally optional with him to do so or not. If he allows any of these matters to be litigated he will be bound by the decision. * * * If an account or claim is unintentionally included in a suit or set-off and is really adjudicated the finding is just as conclusive as in any other case. In short, it may be said that if these defenses are submitted they become subject to the general rule as to *res judicata;* if not presented they may, in general, become the subject of a subsequent action."

In 2 Ency. Pl. and Pr., 1027, *et seq.*, under the title, "Assumpsit," it is said: "According to the strict original principles of the common law, no defenses were admissible under the general issue except such as went in denial of the truth of the declaration.

"Gradually, however, not only such defenses as deny the allegations in the declaration, but almost all matters in avoidance, have been held good defenses under the plea of non-assumpsit.

"Until now the general issue plea may be said to

deny not a part of the case only, but the whole case to such an extent that under it the defendant is generally entitled to give evidence of anything which shows that, *ex aequo et bono*, the plaintiff ought not to recover."

In *Basten* v. *Butter*, 7 East. 479, a rule as to notice was laid down, that where a specific sum has been agreed to be paid, notice ought to be given; otherwise, the plaintiff would have ground to complain of surprise, if evidence were allowed to show that the work and materials were not worth as much as was contracted to be paid. But that on a *quantum meruit*, the plaintiff must come prepared to show that the work done was worth so much, and, therefore, there could be no injustice to him in suffering this defense to be entered into without notice. See 7 Wait, Ac. and Def. 396, 556; Sutherland, Dam., section 168.

In *Higgins* v. *Lee*, 16 Ill. 495, it was held that a party to a contract for finishing a building, who sustained damages by reason of poor materials and inferior workmanship, might recoup under the general issue, by way of reducing the recovery under the *quantum meruit* or *quantum valebant* counts.

In *Turner* v. *Retter*, 58 Ill. 264, it was held that the defendant in trover for a note inclosed for collection might, under a plea of the general issue, recoup his services and expenses in collecting.

In *Cooke* v. *Preble*, 80 Ill. 381, it was held that in a suit to recover the price of a derrick made under a special contract, the defendant might, under the general issue, recoup any damages he had sustained by defects in the work, and delay in completing the same.

In *Wadhams* v. *Swan*, 109 Ill. 46, 62, it is said: "Recoupment, in its strict common law sense, is a mere reduction of the damages claimed by the plaintiff, by proof, under the general issue, of mitigating cir-

cumstances connected with or growing out of the transaction upon which the plaintiff's claim is based, showing that it would be contrary to equity and good conscience to suffer the plaintiff to recover the full amount of his claim. (5 Rob. Prac. 265.)" It is further said, that by reason of the general issue having been filed, there could be no question as to the appellant's right to recoup, in that case, to the extent warranted by the proofs.

In *Stubblefield* v. *Soule*, 21 Ill. App. 154, it was held that in an action on a lease to recover damages for breach of covenants therein, the defendant might introduce by way of recoupment under the general issue, without notice, evidence tending to show that the plaintiff had represented the roof to be in good condition, but that it was leaky, and the defendant's goods were injured in consequence. See, also, *Babcock* v. *Trice*, 18 Ill. 420; *Murray* v. *Carlin*, 67 Ill. 286.

In *Merriam* v. *Woodcock*, 104 Mass. 326, a judgment recovered by a laborer for the full amount of his claim, in an action wherein there was a defense under an answer alleging negligence and unskilfulness in the performance of the services, and charging that the services rendered were of no value, was held to be a bar to a subsequent action brought by the defendant in the former action against the laborer for such negligence. It was said by the court: "It is apparent that the subject-matter of judicial controversy here has already been drawn in question, and directly put in issue in the former action.. * * * A recovery in the first action could not have been had without establishing a performance of the contract, or at least valuable services rendered under it. * * * In this case, plainly it is of no consequence that the answer did not seek technically to recoup in the first action;

for the facts set up in it, if proved, would have made out a complete defense; and the difficulty is, that the same facts are made the foundation of the present action. The subsequent remedy for the excess depended on defeating the first action, in which there could have been no recovery without proof of performance of the contract, or of valuable services rendered under it. The issue once found in favor of the plaintiffs, followed by judgment thereon, is forever settled between these parties."

*Howell* v. *Goodrich*, 69 Ill. 556, was an action on the case brought by Goodrich against Howell for malpractice. Howell had sued Goodrich before a justice of the peace for professional service in the case, and had recovered a judgment for $25.00, which Goodrich had paid on execution. In the suit before the justice, Goodrich had pleaded the general issue. Under that issue there was evidence relating to the defense of malpractice. The court said: "The testimony clearly shows that the defense of malpractice was made before the justice, and that Goodrich examined a witness upon the subject." The recovery in that case having been for the whole amount of the claim sued for, $25.00, shows that it was found that there was no malpractice in the case. It was further said, that there could be no doubt Goodrich was entitled, if he so sought, to recoup in the action for services "whatever damages he might have sustained from unskilful treatment to the extent of the claim sued for, in order to lessen or defeat a recovery in that suit, and thus legitimately have tried the question of malpractice."

In Sutherland on Damages, section 168, speaking of recoupment, it is said: "The right to make such defenses is no longer in question; the plaintiff must show his performance of a condition precedent as a basis of the recovery either of an agreed sum or on a

Gates v. Newman et al.

*quantum meruit*; and there is included in the mere right to make a defense the right to rebut the evidence of performance; and where the value is not fixed by agreement the amount reasonably due for such performance. In such cases, to the extent that the plaintiff's recovery proceeds on proof of performance or its reasonable value, the defendant, if he dispute either as shown by the plaintiff, must defend, or lose all right to contest the conclusion so arrived at or to redress for the deficiencies of the plaintiff's performance."

*Lawson* v. *Conaway*, 37 W. Va. 159, was an action for damages for malpractice. It was in evidence that for his services in the same behalf the defendant had recovered a judgment against the plaintiff; and a question was discussed as to whether this judgment before the justice estopped the defendant therein from prosecuting his cross-action for malpractice. The court, per Lucas, President, said: "The question involved is this: In a suit for malpractice, is the plaintiff estopped by a judgment in an action against him, brought by the physician, to recover compensation for services rendered in the same case. Upon this subject the decisions are much divided. * * * The dividing line between the New York decisions and those of the states which have taken a contrary view is upon the fact whether the judgment obtained by the physician was a judgment by default; for all the cases concede that if the patient appeared and defended the action on the ground of neglect or want of skill, the judgment against him is an estoppel, and he cannot bring his cross-action for malpractice. But when the judgment is by default, and no defense whatever has been made, the majority of the cases would seem to hold that the question of malpractice or diligence and skill was not involved, and that the patient has not impaired his right of action by neglecting or refusing to appear to

the suit against him.  *  *  *  I think a safe conclusion to be reached is that if the physician sue for compensation for his services, and there is no appearance by the patient, a recovery by the former does not estop the latter from bringing his cross-action for malpractice; but if he appear (unless the record show that it was not to defend, but solely to disclaim the waiver of his own right) he is estopped by the recovery. The right to sue for malpractice is both a defense and a subject for cross-action, and if used for either purpose —that is, either by way of defense or recoupment—it destroys the vitality of the claim, if sought to be used in an independent action; and, if the patient has appeared in the suit by the physician, he was bound to make all the defenses he had, and hence he is estopped by the fact that he had a defense of malpractice, of which he failed to avail himself. But, if he has not appeared, then the question of malpractice has never been adjudicated, and he is at liberty to assert his claim by an independent action."

In *Fischli* v. *Fischli*, 1 Blackf. 360, it was held that "whenever a matter is adjudicated, and finally determined by a competent tribunal, it is considered as forever at rest.  *  *  *  This principle not only embraces what actually was determined, but also extends to every matter which the parties might have litigated in the case."

In *Athearn* v. *Brannan*, 8 Blackf. 440, it was held that a record produced to support a plea of former adjudication should be of a judgment in a suit in which the cause of action subsequently sued for might have been given in evidence.

In *Crouse* v. *Holman*, 19 Ind. 30, 37, it was said of this rule: "As we understand the latter branch of this rule, it relates simply to every matter which might have been litigated under the pleadings in the cause."

In *Bradley* v. *Bank of the State of Indiana*, 20 Ind. 528, it was said: "The issues on the attachment in the case were properly made up for trial, at the time of the trial on the merits of the cause of action; and hence, we must hold that they were then tried." Citing *Fischli* v. *Fischli, supra.*

In *Duncan* v. *Holcomb*, 26 Ind. 378, it was said: "It is only those matters involved in the issues made by the pleadings, that are considered *res adjudicatae.*"

In *Comparet* v. *Hanna*, 34 Ind. 74, 77, it is said: "It is not only that which the parties actually litigate, which is put at rest by the judgment, but also every other matter which they might have litigated under the issues in the cause."

In *Ricker* v. *Pratt*, 48 Ind. 73, it was held, in a suit to enjoin a sale under a foreclosure, that the defendant in the foreclosure suit was bound to set up all his defenses or lose the benefit thereof, "for it is a rule of law that the judgment of a competent tribunal not only settles the matter between the parties as to defenses made, but also as to such others as might have been made."

In *Ballard* v. *Franklin Life Ins. Co.*, 81 Ind. 239, it is said, that, "in general, no allegation or evidence, tending to impeach a judgment, will be admitted in any subsequent distinct controversy between the parties. When a matter is finally determined by a competent tribunal, it is considered as forever at rest, not only as to what was actually determined, but as to every other matter which the parties might have litigated in the case. * * * And the rule is the same where a suit is sought to be sustained upon allegations which would have been a good defense in a previous action between the parties."

In *Faught* v. *Faught*, 98 Ind. 470, a judgment quieting title upon a complaint asserting title by virtue of

a will, was held to be a bar to a subsequent suit by a party defendant to the former suit against the plaintiff therein, to set aside the same will on the ground that the testator was of unsound mind.

In *McFadden* v. *Fritz*, 110 Ind. 1, it was said of a judgment in a replevin action, that it "was undoubtedly conclusive as to all the questions litigated, or that might have been litigated under the issues."

In *Woolery* v. *Grayson*, 110 Ind. 149, it was said: "Under the familiar rule declared in *Fischli* v. *Fischli*, 1 Blackf. 360, the decree would estop the appellant, even though there had been no express adjudication upon the question of the validity of the deed of trust, because the question of its validity might have been litigated in that suit."

In *Elwood* v. *Beymer*, 100 Ind. 504, it was said, that the doctrine of *Fischli* v. *Fischli*, upon the point now under consideration, is the recognized law of this State; and it was held that as to a matter upon which the appellant might have filed her cross-complaint in the former suit and which she might then have litigated, she was estopped by the judgment in such former suit.

In *Moore* v. *State, ex rel.*, 114 Ind. 414, it was said: "However much this court may have departed from the doctrines declared in our early cases upon other questions, it may well be said, we think, that, 'without variableness or shadow of turning,' we have adhered, and still adhere, strictly and tenaciously, to the rule declared in *Fischli* v. *Fischli, supra.*"

In *Howe* v. *Lewis*, 121 Ind. 110, 114, it is said: "Everything which might have been adjudicated under the issues in a cause will be presumed to have been adjudicated.    *    *    *    If a cause of action was involved in a former action, either as a set-off, counterclaim or defense, it is barred by the judgment."

In *Gilmore* v. *McClure*, 133 Ind. 571, it was held, that

"a judgment is conclusive as to all matters which were or might have been litigated in the action, and a bar to any further litigation upon the same cause of action between the same parties, or those claiming under them."

In *Reichert* v. *Krass,* 13 Ind. App. 348, 353, this court said: "The case of *Goble* v. *Dillon,* 86 Ind. 327, was an action against a physician for malpractice. The physician answered, that prior to the action for malpractice, he had instituted a suit against the plaintiff before a justice of the peace to recover the value of his services, being the same services out of which the alleged malpractice arose; that the plaintiff appeared to that action and filed an answer of general denial, that the cause was tried and he recovered judgment for his services. It was held that the action for malpractice was necessarily involved in the action to recover for the services, and that the judgment rendered was a complete adjudication of the claim for damages on account of the alleged malpractice. The principle announced in that case has been frequently followed by the supreme court and by this court. *Allen* v. *Jones,* 1 Ind. App. 63; *Howe* v. *Lewis,* 121 Ind. 110."

It was said by this court in *Beaver* v. *Irwin,* 6 Ind. App. 285: "In order to determine what was in issue in the former adjudication, resort must be had to the pleadings there, and everything that might have been litigated under the issues as formed will be conclusively presumed to have been litigated."

Let us suppose the defendant in an action to have had a demand which he might set up in such action either as a defense or as a counterclaim, and let us suppose the defendant to have pleaded such demand specially as a defense, and to have filed no other pleading; and let it be further supposed that a trial has been had, with or without reply, and that the plaintiff

recovered upon his complaint. In a subsequent action upon such judgment, could the defendant set up the same matter as a defense? Manifestly he could not do so, and why? Because his demand has been adjudged to have no valid existence, or because, so far as it constitutes a valid claim, it has been applied, in the former action, in reduction of the plaintiff's judgment. If in the former action the plaintiff recovered upon his entire cause of action, it was therein adjudged that the defendant's cause of defense had no valid existence. If the defendant's demand was of such a nature that it could be pleaded either as a defense or as a counterclaim, it would be sustained as a defense by the same evidence that would be necessary to sustain it if pleaded as a counterclaim. If, when pleaded as a defense, it was adjudged to have no valid existence as a defense, it must be concluded that the evidence was not sufficient to support it as a legal cause of defense. If it had no legal existence as a defense, can it be supposed that the same evidence would make it valid as a counterclaim? The subject-matter could not be again put in issue and made a matter of judicial determination.

If, instead of the special answer above supposed, the defendant had filed a general denial, or any pleading which would make an issue under which such matter of defense could be given in evidence, the effect of a judgment for the plaintiff would be the same; and that is the condition of the matter now here under consideration.

If a claim set up in defense has been adjudicated in favor of the plaintiff, the defendant, as against the judgment obtained, cannot set up the same matter, dependent upon the same evidence, either as a defense or as a counterclaim; and if it could be proved under any form of issue made, it will be presumed to have been adjudicated.

If evidence introduced in support of the defense so pleaded were not sufficient to protect the defendant from the recovery of a judgment against him, how could it be supposed to be sufficient to support a counterclaim which, "to be available to a party, must afford to him protection in some way against the plaintiff's demand for judgment, either in whole or in part?" 4 Am. and Eng. Ency. of Law, 332.

Is it not true that the facts set up in the counterclaim in the case at bar would have been sufficient to defeat the recovery of the judgment?

Is it not shown by the counterclaim that the appellant was injured by the misconduct of the appellees to the full amount of their fees for services ? The services were of no value to the appellant personally, and the judgment was sought and recovered against him personally upon a *quantum meruit*, on which the appellees were entitled to recover only what they deserved to be paid for their services, being the reasonable value of services rendered by the plaintiffs for the defendant.

The idea with which the principal opinion closes seems to be, that the services of the attorneys were valuable to the "trust estate," but not valuable to the appellant, and that, though he was injured personally by the appellees in the rendering of those services to the full extent of the demand made against him personally in the action in which the judgment here sued on was obtained, yet, upon the assumption that the services were valuable to the trust estate, the appellee could not, under the general issue, show his own injury in the action against him, where, it is claimed, "it would have tended to defeat neither the whole nor a part of the value of such services." Yet, it is held, he may set up, by counterclaim in the action on the judgment, the matter which, it is said, he could not, in the former action, prove as a defense.