## ROBERTS *v.* LEUTZKE ET AL.

[No. 5,815. Filed October 3, 1906. Rehearing denied February 27, 1907.]

1. PLEADING.—*Complaint.—Action upon Judgment.*—A complaint to enforce a judgment of a sister state, which sets out such judgment and alleges that the court rendering same had jurisdiction over the parties, is sufficient. p. 579.

2. EVIDENCE.—*Transcript of Sister-State Judgment.—Requirements.*—A transcript of a sister-state judgment, authenticated in accordance with §§458, 479 Burns 1901, §§454, 472 R. S. 1881, and setting out a personal judgment rendered by a circuit court of such state, is admissible in evidence, and *prima facie* shows the existence of a debt of the amount shown thereby. p. 579.

3. JUDGMENT.—*Sister-State.—Presumptions of Regularity.*—All presumptions and intendments are indulged in favor of the correctness, regularity and validity of a sister-state judgment. p. 580.

4. SAME.—*Courts of Record.—Jurisdiction.—Presumptions.*— Where the transcript of a sister-state judgment shows that the judgment was rendered by a court of record, the presumption is that such court had jurisdiction of the parties and subject-matter, and that it rightfully rendered such judgment. p. 580.

5. JURISDICTION.—*Presumptions.—Collateral Attack.*—While the presumption is that a sister-state court of record had jurisdiction when it rendered the judgment sued on in this State, such jurisdiction is subject to a collateral attack. p. 580.

6. JUDGMENT.—*Outside of Issues.—Validity.*—A judgment determines all issues which were or might have been litigated in the case; but a judgment wholly outside of the issues presented, is void. p. 581.

7. SAME.—*Parties.—Jurisdiction.—Equity.*—In a suit in equity in a circuit court in Wisconsin, in which plaintiffs sought the cancelation of certain notes because of defendants' fraud in the execution thereof, a judgment for damages, instead of a decree of cancelation, against certain defendants is not void for want of jurisdiction, where the complaining defendants appeared, filed answers, and tried the case on the merits. p. 585.

8. SAME. — *Equity.—Issues.—Fraud.—Cancelation.—Alternative Relief in Damages.*—In a suit for the cancelation of certain notes, where the evidence shows fraud in the procurement thereof, and that they were wholly without consideration, but that they were in the hands of a *bona fide* holder for value, the trial court may render a personal judgment in damages for the amount of such notes in favor of the defrauded parties, where the complaint prayed, among other things, "for such other and further order, judgment and relief as the court, upon the proof, may deem just and equitable." p. 585.

9. SAME.—*In Equity.—Character of.*—The court, in an equity case, can mould its decree in any manner that justice requires, or it may render a judgment at law where the relief sought in equity is not available. p. 585.

From Hamilton Circuit Court; *Ira W. Christian,* Judge.

Action by Charles Leutzke and others against Austin Roberts. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

Roberts v. Leutzke—39 Ind. App. 577.

*Gavin & Davis* and *W. S. Christian,* for appellant.
*Shirts & Fertig,* for appellees.

MYERS, J.—The complaint in this case is in one paragraph, and is founded upon a judgment rendered in favor of appellees and against appellant in the circuit court of Manitowoc county, Wisconsin. The overruling of a demurrer to the complaint is assigned as error.

Appellant contends that the complaint is defective for the reason that it does not disclose the cause of action or subject-matter in controversy before the Wisconsin court. According to appellant's theory, in order to make this complaint good, it should contain copies of the pleadings, or at least allegations showing that the judgment declared on was responsive to the issues. The complaint now under consideration shows that in an action commenced by appellees against appellant in the circuit court of Manitowoc county, Wisconsin, appellant entered a full appearance, and upon a trial of that cause the judgment herein sued on was rendered; that the Wisconsin court is a court of general jurisdiction. Upon the authority of *Gates* v. *Newman* (1897), 18 Ind. App. 392, the complaint in the case at bar is sufficient to require an answer.

The second and only other error assigned by appellant is the overruling of his motion for a new trial. Considering the reasons assigned by appellant for a new trial, in the order by him discussed, our attention is called (1) to the ruling of the court in admitting in evidence, over his objection, the transcript of the judgment of the Wisconsin court.

This transcript does not contain the pleadings and issues tendered in that court, and upon that ground appellant bases his objection. That the transcript is properly authenticated under §§458, 479 Burns 1901, §§454, 472 R. S. 1881, and exhibits an entry of a personal judgment given by the circuit court of Manitowoc county, Wisconsin, in favor of appellees and against appellant for $3,884.85, is unquestioned. This being true, it was

properly admitted in evidence (*Lieb* v. *Lichtenstein* [1890], 121 Ind. 483, 490; *Bailey* v. *Martin* [1888], 119 Ind. 103), and was *prima facie* evidence of the debt herein sued on. *Holt* v. *Alloway* (1827), 2 Blackf. 108.

The second reason discussed by appellant in support of his motion for a new trial is that the decision of the trial court is not sustained by sufficient evidence and is contrary to law.

It is a familiar rule of law that all presumptions and intendments are to be indulged in favor of the regularity of all the acts and proceedings of courts of general jurisdiction, that they have jurisdiction to give the judgments they render, and that such judgments are according to the laws of the state where had. In the case at bar it sufficiently appears from the transcript that the judgment declared on was rendered by a court of record, and, being a court of record, it is presumed to be a court of general jurisdiction. (*American, etc., Ins. Co.* v. *Mason* [1902], 159 Ind. 15); and, applying the rule just stated, it is presumed to have jurisdiction of the subject-matter of the action of the parties interested (*American, etc., Ins. Co.* v. *Mason, supra; Gates* v. *Newman, supra*), and rightfully to have given the judgment sued on. *Runner* v. *Scott* (1898), 150 Ind. 441; *Galpin* v. *Page* (1873), 18 Wall. 350, 21 L. Ed. 959.

While jurisdiction may be presumed, it is nevertheless a subject open to inquiry, and may be attacked in a collateral proceeding. *Grover, etc., Mach. Co.* v. *Radcliffe* (1890), 137 U. S. 287, 11 Sup. Ct. 92, 34 L. Ed. 670; *Thormann* v. *Frame* (1900), 176 U. S. 350, 20 Sup. Ct. 446, 44 L. Ed. 500; *Pennoyer* v. *Neff* (1877), 95 U. S. 714, 24 L. Ed. 565; *American, etc., Ins. Co.* v. *Mason, supra; Long* v. *Ruch* (1897), 148 Ind. 74; *Runner* v. *Scott, supra; Gates* v. *Newman, supra.*

The Wisconsin judgment is fair on its face, and the burden of showing a want of jurisdiction in the court rendering it was upon appellant. By his affirmative paragraph of answer to the complaint herein he challenges the validity of the judgment in suit, upon the theory that no pleading or issue before the Wisconsin court authorized a personal judgment against him, and therefore the finding and judgment of the court in that respect was not only irregular but *coram non judice* and void. The settled law in this State is that a "judgment is conclusive upon all questions which were or might have been litigated and determined within the issues before the court." *Maynard* v. *Waidlich* (1901), 156 Ind. 562, and cases cited. But where the judgment is not responsive to the issues and not the adjudication of a subject included in them, it will be considered irregular and void. *McFadden* v. *Ross* (1886), 108 Ind. 512, and cases cited; *Hutts* v. *Martin* (1893), 134 Ind. 587; *Whitney* v. *Marshall* (1894), 138 Ind. 472; *Bremmerman* v. *Jennings* (1885), 101 Ind. 253, 257; *Reynolds* v. *Stockton* (1891), 140 U. S. 254, 11 Sup. Ct. 773, 35 L. Ed. 464; *Pray* v. *Hegeman* (1885), 98 N. Y. 351.

Appellant introduced in evidence a transcript of all the pleadings, proceedings and judgment in the Wisconsin court. From this transcript we learn that on June 22, 1903, appellees commenced a suit in equity in the circuit court of Manitowoc county, Wisconsin, wherein appellant and others were defendants. The complaint alleges in substance that a certain firm of lawyers, residents of Manitowoc county, and parties to the action, have in their possession, as agents of the firm of which appellant was a member, three notes for $1,000 each; that appellees' signatures were obtained to said notes through false and fraudulent representations made to them separately and individually by appellant's agent, O'Connell, and upon an agreement with O'Connell that said notes would not be

The number 6 appears in the margin beside the text, indicating a headnote reference.

delivered to his principal and have validity until each had been signed by all the parties subscribing for stock in a company being formed for the purpose of purchasing a stallion, property of the firm of which appellant was a member, and then in the possession of said O'Connell; that unless said notes were signed by all the parties aforesaid they were to be returned to the subscribers and destroyed; that a number of the subscribers for stock in said proposed horse company refused to sign, and never did sign said notes; that on March 5, 1903, O'Connell delivered said stallion to one of the appellees, to be held by him for all who had subscribed for stock, and upon condition that all who had subscribed for stock should join in the execution of said notes; that said O'Connell, contrary to the agreement and conditions upon which appellees signed said notes, delivered the same to his principal, who took possession thereof, and who, on and after March 6, 1903, claimed to be the owners and holders thereof, and that the same were legal and valid claims against appellees, and were attempting to sell and negotiate the same to innocent third persons so as to cut off, if possible, appellees' defense thereto.

The complaint also contains allegations relative to said agent's representations as to the soundness of said horse and as to his being free from disease at the time he was delivered to one of the appellees, and as to his unsoundness and diseased condition at that time, and as to certain subscriptions for stock being fraudulent, which were by said agent represented to be bona fide; also allegations relative to appellees' demand upon appellant for the return of said notes and their offer to surrender said stallion, and claiming expense for his keep, and closes with the following prayer: (1) That said firm of attorneys, naming them, also the members of appellant's firm "be each perpetually restrained and enjoined from selling, negotiating or otherwise transferring said notes, or any one of them; (2) that said notes and each of

them be surrendered into court and canceled; (3) that a temporary injunction be issued, restraining and enjoining said defendants * * * from selling, negotiating, transferring or parting with the possession of said notes or any of them during the pendency of this action, and until the further order of the court; (4) for their damages in the sum of $300, and for the costs and disbursements of this action; (5) for such other and further order, judgment and relief as the court, upon the proof, may deem just and equitable." Said firm of lawyers answered by admitting that they were in possession of said notes; that they had received the same from the Citizens National Bank of Attica, Indiana, through the Manitowoc Savings Bank of Manitowoc, Wisconsin; that they have no interest in said action, and are willing and ready to deliver the notes to whoever may be entitled to the same.

This transcript further shows that Alvin P. Nave and the Citizens National Bank of Attica, Indiana, were admitted as parties defendant to that action, and each filed a separate answer, showing that prior to the commencement of the action, and in the due course of business, and for value, said notes had been transferred by appellant's company to Nave, and by Nave to said bank, and that said bank was then entitled to the possession of the same. The transcript also shows that appellant answered the complaint, admitted that he and others were partners, doing business at Westfield, Indiana, at the time appellees' alleged cause of action accrued, but that subsequently thereto, on October 7, 1903, said partnership was dissolved, and that he had possession of all the partnership property for the purpose of closing up its affairs. Said answer further shows that said partnership, through its agent and servant, O'Connell, in the spring of 1903, desiring to sell one of their stallions, solicited and obtained from persons, including all of appellees, subscriptions for thirty shares, or interests, in said horse, when purchased, at $100 per share;

that by said subscription each and every subscriber thereto promised, on the delivery of said horse to the company then forming, to pay the purchase price therefor by executing to said partnership joint notes, drawing interest, and payable one-third in one year, one-third in two years, and one-third in three years, and, if they failed immediately to join in the execution of such notes, then the whole sum, to wit, $3,000, to become immediately due and payable in cash; that immediately after the signing of this contract said subscribers, at a meeting in which all participated, formed a company, and elected from their number a president, secretary, and treasurer; that thereafter, about March 6, 1903, at said county of Manitowoc, "said defendants, relying upon said subscription contract of these plaintiffs and of the defendant John Guttman and of their said horse company, sold and delivered to the plaintiffs herein and the defendant John Guttman one imported French Percheron stallion, * * * for the agreed sum of $3,000, and for which said plaintiffs and the defendant John Guttman and their company agreed to pay in the manner and at the time as hereinbefore stated, and which was a fair and reasonable price therefor;" that thereafter and upon demand the three notes in suit were executed and delivered, and in conformity with their said agreement and contract. The answer further shows the transfer of said notes for value, and in the due course of business by appellant's firm, before maturity and prior to the beginning of the action, to Alton P. Nave, and by Nave to the Citizens National Bank of Attica, Indiana; that appellant's firm obtained said notes from the makers thereof in good faith and for value and in the due course of business, and not by fraud or misrepresentation; and, after denying all allegations in the complaint not admitted or controverted, demands that the action be dismissed as to them, with costs.

The pleadings, of which we have endeavored to give the substance, cover more than forty typewritten pages of the

record, and exhibit facts showing that the Wisconsin court had jurisdiction of the person of appellant. Such jurisdiction, if the issues and facts so warranted, authorized the court to enter personal judgment. The case was one based upon appellant's fraud, and brought in a court of equity. Specific and general equitable relief was demanded.

Fraud is a subject of equity jurisdiction, and upon the facts pleaded a court of equity works out the rights of the parties before it. In the case at bar it will hardly be denied that the Wisconsin court had the power to determine the rights of the parties upon the facts pleaded; and, this, being true, any relief it might give by reason of such facts may properly be said to be in issue, and therefore within the rule requiring jurisdiction of the subject-matter and of the person.

The Wisconsin court rendered a personal judgment against appellant, and the presumption is that it was according to the facts pleaded as disclosed by the evidence at the trial. Exact justice between the parties being the purpose of a court of equity, it will not do to say that its power to grant relief can be circumscribed by any fast or technical rule. The rule expressed by the court in *Real Estate Sav. Inst.* v. *Collonious* (1876), 63 Mo. 290, 295, that such court "will not content itself in this regard by any half-way measures; it will not declare that a party has been defrauded of his rights and then dismiss him with a bland permission to assert, at new cost and further delay, those rights in another forum"—citing authorities—is quite applicable here and expressive of our views. The same principle as announced by the Missouri court was ruled in the cases of *Wade* v. *Bunn* (1876), 84 Ill. 117; *Martin* v. *Martin* (1890), 44 Kan. 295, 24 Pac. 418; *Odd Fellows Sav. Bank's Appeal* (1889), 123 Pa. St. 356, 365, 16 Atl. 606, and *McCalmont* v. *Lawrence* (1847), 1 Blatchf. (U. S.) 232, Fed Cas. No. 8,676. Also see 1 Pomeroy, Eq. Jurisp.

(3d ed.), §237, note 3.   We find nothing in the record to lead us to the conclusion that appellees knew, when they filed their suit in the Wisconsin court, that the notes had been transferred and were then in the hands of innocent purchasers.   These facts were developed by the answers. It is said in *Gates* v. *Paul* (1903), 117 Wis. 170, 191, 94 N. W. 55: "If one sues in equity in good faith and fails to establish his cause, but shows a state of facts entitling him to recover at law, the court, having rightfully obtained jurisdiction for a proper purpose, may retain the cause and grant just such relief as upon the facts the plaintiff appears entitled to, whether at law or in equity."   To the same effect is the ruling in the case of *Milkman* v. *Ordway* (1870), 106 Mass. 232, 253.   See, also, 1 Pomeroy, Eq. Jurisp. (3d ed.), §237, note 3.   In our opinion the better reasoning and the weight of authority is against appellant's contention and supports the ruling of the trial court.

The last reason in support of appellant's motion for a new trial is that the judgment is excessive.   After a careful examination of the record upon this question we are of the opinion that the ruling of the trial court in this particular was right.

Finding no error in the record, the judgment is affirmed.